STATE v. R. J. MORRISON.

(Decided June 9, 1900.)

*Indictment—Selling Pianos and Organs Without License—Revenue Act 1899, Chapter 11, Section 27—Ten Dollar License.*

1. The legislative intent was that the $10 license authorizes only the person having it in possession to sell under it. Such has always been the policy of the law, except when duplicates or copies of the license is authorized.

2. If the licensee employs more than one salesman, he must take out and furnish each salesman with an additional license.

INDICTMENT for engaging in the business of selling pianos and organs in Lincoln County without license, tried before *Allen, J.,* at Spring Term, 1900, of LINCOLN Superior Court. The defendant had no license himself, but was acting as one of the salesman of E. M. Andrews & Co. (Incorporated), who had taken out a license, paying $10 therefor. The jury found a special verdict, upon which his Honor pronounced the defendant not guilty, and defendant was discharged. The Solicitor appealed. The special verdict appears substantially in the opinion.

*Messrs. D. W. Robinson,* and *Brown Shepherd,* for the *Attorney-General,* for State.
*Messrs. Jones & Tillett,* for defendant.

CLARK, J. Sec. 27, chap. 11, Laws 1899, requires that every person or corporation engaged "in the business of selling pianos or organs by sample, list or otherwise in this State, shall before selling or offering to sell any such instrument, pay to the sheriff or tax collector a tax of ten dollars on each brand and obtain a license which shall operate one year from

its date and all licenses provided for in this section shall be countersigned by the register of deeds, and shall not be valid unless so countersigned."

The defendant is indicted for engaging in the business of selling pianos and organs in Lincoln County without license. It is found by the special verdict that E. M. Andrews & Co., a corporation having its principal place of business in Mecklenburg, upon payment of $10, obtained license from the sheriff of that county under the above section; that it had several agents and employes travelling and selling organs by sample under that one license; that the defendant sold organs in Lincoln as one of the agents of aforesaid corporation; that no license had been issued to him. It is not found, nor indeed is it contended, that the defendant had in possession the license issued to said corporation. If he had that was a matter of defense to be shown in evidence, and found as a fact. *State v. Smith,* 117 N. C., 809; *Cook v. Guirkin,* 119 N. C., 13, and cases cited. The sole question arising upon the special verdict is whether such license protects only the person or agent who has it in possession or an unlimited number of agents.

Among the rules for the construction of an act, if of doubtful meaning, is that the intent must govern if it can be ascertained, and a reasonable construction must be placed upon the statute, taking it in connection with the other provisions with which it is associated and the previous law.

1. The requirement that the license must be signed by the sheriff and countersigned by the register of deeds, and the fact that when thus authenticated the licensee shall be able to sell anywhere in the 97 counties of the State would indicate that the license shall protect only the agent who at the time has it in possession. If this were not so, why require signing and countersigning, and why the absence of provisions

for certifying duplicates or copies? Shall the sheriffs of each of the other counties be held off by the simple statement of anyone selling pianos and organs that he is agent for a corporation which has paid $10 to some sheriff in perhaps a distant county and gotten his license? If the license is good without producing it, then every sheriff must take the word of any salesman who says that his principal has gotten his license in some other county, or run the risk of an action for false imprisonment or illegal arrest. Is that a reasonable construction of the law?

2. Construed by the context, sec. 26, the section just before this, requires a license for selling sewing machines (in which there is possibly less profit because more competition) to be issued by the State Treasurer. For that the sum of three hundred and fifty dollars is required, and there is accordingly a provision that the licensee "shall have power to employ an unlimited number of agents to sell" under his license, and that the Treasurer shall issue duplicate copies of the license upon payment of 50 cents each. The absence of these two provisions in sec. 27, and the exaction of only $10 instead of $350, is convincing proof that the legislative intent was that the latter license should authorize no agent to sell other than the one having it in possession. There is nothing to indicate that the Legislature meant to discriminate against useful sewing machines and in favor of ornamental pianos, by taxing the business of selling the former $350, and the latter only $10. This would not be a reasonable construction of the statute.

3. The former law, 1895, chap. 116, sec. 25, required a tax of $250 for license to sell pianos and organs. The reduction to $10 was made by the Act of 1897, chap. 168, sec. 26, and though the Public Treasurer was to issue the license there was a significant absence of authority to licensee to employ

an unlimited number of agents and for issue to him of certified copies of the license which then, as now, appears in the section (25) just before it, and which exacts a license tax of $350 for the kindred and hardly more profitable business of selling sewing machines. These two sections as to licenses for selling sewing machines and for selling pianos and organs are re-enacted in 1899 with the difference only that in the latter section the license is to be issued by the sheriff instead of the State Treasurer.

For these reasons we must think that the legislative intent was that the $10 license authorizes only the person having it in possession to sell under it. Such has always been the policy of the law, except when the statute authorized the issuance of certified duplicates, or copies, of the license. *Lewis v. Dugar,* 91 N. C., 16; *State v. Smith,* 93 N. C., 516; *State v. Rhyne,* 119 N. C., 905. The statutes were possibly more explicit in those cases, but they serve to show the settled policy of the law in these matters. Upon the special verdict, the Court should have adjudged the defendant guilty.

Reversed.