Defendant was tried and found guilty in Recorder's Court of Caldwell County on 19 January, 1943, upon warrant sworn out 2 January, 1943, charging defendant with unlawful possession on 25 December, 1942, of "a quantity of intoxicating liquors for the purpose of sale." Judgment of the court was that defendant be confined in the common jail of Caldwell County for a period of six months, and assigned to work on the roads under the control and supervision of the State Highway and Public Works Commission, to be suspended upon payment of a fine of $50.00 and costs. Defendant appealed therefrom to Superior Court of Caldwell County.
At February Term, 1943, of Superior Court of Caldwell County, a bill of indictment was found by the grand jury charging defendant in separate counts with (1) "unlawful possession of intoxicating liquors for purpose of sale," (2) unlawful possession of intoxicating liquors for beverage purposes, (3) unlawful transportation of intoxicating liquors, (4) unlawful sale of intoxicating liquors, and (5) unlawful purchase of intoxicating liquors, all on 25 December, 1942. At said term of Superior Court defendant pleaded not guilty and moved to quash the bill of indictment on the ground that as this is a case on appeal from the Recorder's Court, a court with final jurisdiction, it should be tried *Page 612 
on the warrant and not upon a bill of indictment. Motion denied. Exception by defendant.
And on the trial in Superior Court upon the bill of indictment evidence for the State tends to show these facts: Defendant has a store on the ground floor and he, his wife and two children live upstairs over the grocery store in a certain building in Caldwell County. On 20 December, 1942, officers of that county, armed with a warrant therefor, searched the premises of defendant for intoxicating liquor. While searching was going on defendant was downstairs in the grocery department, but he went upstairs while officers were there. His wife and his children were there, his wife upstairs in the living quarters, and two men were downstairs in the store. Five pints of bottled in bond tax-paid liquor, two pints of which were stuck in behind the seat of the settee, two pints in the back or behind the seat of the upholstered chair, and one pint between the mattress and springs of a bed were found upstairs in the living quarters. The seals had not been broken. A sixth pint was found at the back door where one of two men in the store was seen to stoop and "set something down." While the evidence fails to show whether the man set it down, or whether the seal on it was broken, it does show that it too was tax-paid whiskey. The officers saw some empty bottles there, and Officer Goble testified: "I saw some empty bottles. I can't tell whether they were whiskey bottles or not. The ones I saw looked more like wine bottles. I don't know whether he sells wine or not. I smelled of several of the bottles but couldn't tell exactly whether the odor was whiskey or not. It was just a kind of sour smell. . . . The bottles I saw were wine bottles."
Motions for judgment as of nonsuit were overruled. C. S., 4643. Defendant excepted.
The court submitted the case to the jury only upon the count charging defendant with unlawful possession of intoxicating liquors for purpose of sale.
Verdict: Guilty.
Judgment: That defendant pay a fine of $100.00 and costs, and be confined in the common jail of Caldwell County for a period of twelve months and assigned to work under supervision and control of State Highway and Public Works Commission, the sentence being suspended upon conditions named. Defendant moved in arrest of judgment.
Defendant appealed to Supreme Court and assigns error.
The record on this appeal fails to support defendant's exceptive assignment to the denial of his motion to quash the bill of indictment for that, while his appeal from a judgment of Recorder's Court upon warrant charging unlawful possession of intoxicating liquor for the purpose of sale on 25 December, 1942, was pending in Superior Court, that court did not have jurisdiction to try him on a bill of indictment, of latter date than the warrant, charging the same offense. The record contains nothing to show that the offenses are the same. There is no admission or finding of fact to this effect, and the fact that both the warrant and the bill of indictment charge that the offense took place on 25 December, 1942, is not sufficient to indicate the identity of offense as a matter of law. Time is not of the essence of the offense, and the exact time need not be specified in the bill of indictment. C. S., 4625; S. v. Williams, 219 N.C. 365,13 S.E.2d 617; S. v. Moore, 222 N.C. 356, 23 S.E.2d 31; S. v. Trippe,222 N.C. 600, 24 S.E.2d 340. Hence, the record fails to present conflict of jurisdiction between the Recorder's Court under C. S., 1567, and the Superior Court under C. S., 1437. Furthermore, while the record shows that motion to quash was made "before any evidence was offered," it is not clear that the motion was made before plea of not guilty was entered. If not made before such plea, the motion is addressed to discretion of the trial court, and is not reviewable on appeal. S. v.Gibson, 221 N.C. 252, 20 S.E.2d 51.
Defendant's challenge to the ruling of the court below in denying his motions for judgment as in case of nonsuit, C. S., 4643, presents for determination two basic questions: First: Where a person, the defendant in this case, has in his possession so-called tax-paid intoxicating liquors in quantity not in excess of one gallon, that is, alcoholic beverages of such quantity "upon which taxes imposed by the laws of Congress of the United States or by the laws of this State" have been paid, in his private dwelling in a county in which the sale of such intoxicating liquors is not authorized under and by virtue of chapter 49, Public Laws 1937, called the Alcoholic Beverage Control Act, nothing else appearing, is such possession now prima facie evidence that such intoxicating liquors are possessed by such person for the purpose of being sold?
This is the first time that this question has been so squarely presented to this Court as to require a decision on it. However, we are of opinion and hold that, in so far as applicable to such factual situation, suchprima facie rule of evidence, prescribed by 3 C. S., 3411 (j), section 10 of the Turlington Act, chapter 1, Public Laws of 1923, is in irreconcilable conflict with the provisions of the Act of the General Assembly of 1937, entitled "An Act to Provide for the Manufacture, Sale and Control *Page 614 
of Alcoholic Beverages in North Carolina," chapter 49, Public Laws 1937, and, to such extent, is repealed thereby.
At the time of the enactment of the 1937 Act, chapter 49, there were certain statutes in effect in this State which are pertinent to be considered in ascertaining what the Legislature intended by the provisions of the Act, from a State-wide standpoint. Section 3379 of Consolidated Statutes declared that it is unlawful for any person to have or keep in possession, for the purpose of sale, any spirituous liquor, and that proof of the possession of more than one gallon of such liquors at any one time shall constitute prima facie evidence of the violation of this section. Section 3411 (b) of 3 Consolidated Statutes of 1924, section 1 of the Turlington Act, chapter 1, Public Laws 1923, declared that "no person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this article . . ." And, although section 3411 (j) of 3 Consolidated Statutes of 1924, section 10 of the Turlington Act, chapter 1, Public Laws 1923, provided that "it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof, and his family residing in such dwelling, and of his bonafide guests when entertained by him therein," it also provided that "the possession of liquor by any person not legally permitted under this article to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this article." The only other provision of the Turlington Act relating to lawful possession pertained to wine for sacramental purposes.
With knowledge of the statutes, and of strict application and liberal construction of the same in the decisions of the courts "to the end that the use of intoxicating liquor as a beverage may be prevented," the State's policy expressly declared in the Turlington Act of 1923, 3 C. S., 3411 (b), the General Assembly of 1937 in enacting chapter 49 of Public Laws of that year, declared: "Section 1. That the purpose and intent of this Act is to establish a system of control of the sale of certain alcoholic beverages in North Carolina, and to provide the administrative features of the same, in such manner as to insure, as far as possible, the proper administration of the sale of certain alcoholic beverages under a uniform system throughout the State." As a part of this system provision is made for the operation of stores in counties coming under the provisions of the Act, at which alcoholic beverages may be bought legally. And in section 14 it is declared that "it shall not be unlawful for any person to transport a quantity of alcoholic beverages not in *Page 615 
excess of one gallon from a county in North Carolina coming under the provisions of this Act to or through another county in North Carolina not coming under the provisions of this Act: Provided, said alcoholic beverages are not being transported for the purposes of sale, and provided further, that the cap or seal on the container or containers of said alcoholic beverages has not been opened or broken . . ." Moreover, in section 22, it is provided that "it shall be unlawful for any person, firm or corporation, to purchase in, or to bring in this State, any alcoholic beverage from any source, except from a county store operated in accordance with this Act, except a person may purchase legally outside of this State and bring into the same for his personal use not more than one gallon of such alcoholic beverage . . ." And in section 27, it is declared that certain laws passed in 1935, not pertinent here, and "all other laws and clauses of laws in conflict herewith to the extent of such conflict are hereby repealed." And in this Act of 1937, chapter 49, no reference is made to the provision of 3 C. S., 3411 (j), as to it not being unlawful to possess liquor in one's private dwelling, etc., as above quoted. And, albeit no express reference is made to the provisions of that part of section 3, C. S., 3411 (j), section 10 of the Turlington Act, Public Laws 1923, chapter 1, relative to the prima facie rule of evidence, quoted above, the express provisions of the Act present an irreconcilable conflict therewith. To summarize, the Legislature has said in this Act of 1937, chapter 49, that it is lawful (a) to purchase intoxicating beverages from a county store operated in accordance with the provisions of the act, and (b) if the transportation of such alcoholic beverages be not for purpose of sale, to transport a quantity of same not in excess of one gallon from a county coming under the provisions of the Act to or through another county in North Carolina not coming under the provisions of the Act, and (c) to bring into the State for personal use not more than one gallon of alcoholic beverages purchased legally outside of the State. These provisions are subjective in character, and harmonize with the prima facie rule of evidence as to possession of more than one gallon of spirituous liquors as contained in C. S., 3379. But to give general effect to the prima facie rule of evidence set out in 3 C. S., 3411 (j), would be to hold that, although the Legislature has by this 1937 Act legalized the sale of alcoholic beverages to a person at authorized stores, and although it has legalized the transportation of such alcoholic beverages by him "to or through" any county in this State, and although it has not repealed that provision of 3 C. S., 3411 (j), which says that it is not unlawful for him to possess intoxicating liquor in his private dwelling while the same is occupied and used by him as his dwelling only, for his personal consumption, and that of his family residing in such dwelling, and his bona fide guests when entertained *Page 616 
by him therein, the possession of any such intoxicating liquors or alcoholic beverages is "prima facie evidence" that such person keeps same "for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions" of the Turlington Act, Public Laws 1923, chapter 1.
To accept this construction is to attribute to the Legislature the intention to make it lawful for a person to purchase, transport and possess in his home for the purposes mentioned, not more than one gallon of intoxicating liquors or alcoholic beverages, and, at the same time, to make the possession of it evidence of his guilt of a criminal offense for which, upon charges being preferred, he may be convicted by a jury and subjected to punishment therefor. We cannot assume that the Legislature had any such inconsistent and conflicting intentions. It is not ours to make the law. That is legislative. It is ours to interpret the law as the Legislature enacts it.
The second basic question: Holding as we do hereinabove on the first basic question, are the facts and circumstances of such possession of such quantity of tax-paid intoxicating liquors as disclosed by the evidence in the record on this appeal, taken in the light most favorable to the State, sufficient to take the case to the jury on the issue arising upon the court charging unlawful possession of intoxicating liquors for the purpose of sale? The answer is No. All the evidence tends to show that defendant and his wife and children lived upstairs in the building where the whiskey was found and there is no evidence that the upstairs room was used for any other purpose. Five pints of the tax-paid liquor were found there. And there is no sufficient evidence to connect defendant with the possession of the other pint found at the back door of the store — the fair inference being that it was put there by another, for whose acts the evidence fails to show defendant to be responsible. In absence of other circumstances, the size of the containers and the manner in which the bottles were kept is not evidence of possession for purpose of sale, and do not justify an inference of guilt.
For reasons stated, the motion of defendant for judgment as in case of nonsuit should have been sustained. Hence, the judgment is
Reversed. *Page 617