## STATE v. WILLIAM G. SCOGGIN, JR.

(Filed 22 August, 1952.)

**1. Municipal Corporations § 40—**

The proof or admission that defendant owned an automobile registered in his name and that such automobile was parked on a city street in violation of its parking meter ordinance without evidence or admission tending to show who parked the automobile at the time and place in question, *is held* insufficient to sustain a conviction of defendant of parking or permitting his vehicle to be parked in violation of the ordinance.

**2. Constitutional Law § 10a—**

It is the duty of the courts to interpret and apply the law as it is written; it is the function and prerogative of the Legislature to make the law.

**3. Constitutional Law § 8a—**

The General Assembly has the power to declare that proof or admission of certain facts shall constitute a presumption of the main or ultimate fact in issue so as to make out a *prima facie* case, provided there is a rational connection between what is proved and what is to be inferred, but in the absence of legislative enactment the courts will not invoke such presumptions or rules of evidence to declare a defendant guilty of a criminal offense.

BARNHILL, J., concurring.
DEVIN, C. J., dissenting.
JOHNSON, J., dissenting.

APPEAL by defendant from *Carr, J.,* March Term, 1952, of WAKE.

The defendant was tried upon a warrant charging him with parking overtime in a parking meter zone on Fayetteville Street in the City of Raleigh, between Morgan Street and Cabarrus Street, in violation of the City's traffic ordinance limiting the time for parking motor vehicles.

The defendant was tried and found guilty in the Municipal Court of the City of Raleigh. He appealed to the Superior Court.

In the Superior Court, the jury returned a verdict of guilty as charged and from the judgment imposed, the defendant appeals to this Court assigning error.

*Attorney-General McMullan and Robert B. Broughton, Member of Staff, for the State.*

*Joseph B. Cheshire, Jr., for defendant, appellant.*

DENNY, J. The defendant does not challenge the validity of any provision contained in the traffic ordinance of the City of Raleigh, but appeals from the refusal of the court below to sustain his motion for nonsuit at the close of the State's evidence and renewed at the close of all the evidence.

It is provided in Section 19, Chapter 5, of the 1950 Code of the City of Raleigh, ". . . at any time between the hours of 8 :00 A.M. and 6 :00 P.M. of any day, except Sundays . . . No person shall park any vehicle for longer than ONE HOUR at any one time along the following streets within the areas and limits defined as follows: . . . (b) Along Fayetteville Street between Morgan Street and Cabarrus Street." Section 58 of this chapter provides, "No person shall allow, permit or suffer any vehicle registered in his name to stand or park in any street in this city in violation of any of the ordinances of the city regulating the standing or parking of vehicles." And section 68 of the same chapter reads as follows: "It shall be unlawful for any person to cause, allow, permit, or suffer any vehicle registered in his name, or under his control, to be parked overtime or beyond the lawful periods of time as above set forth."

It was admitted by the defendant and his counsel that on 11 September, 1951, that day not being a Sunday, and between the hours of 8 :00 a.m. and 6 :00 p.m., the defendant's motor vehicle was parked in a parking meter space in a one-hour parking zone on Fayetteville Street, in the City of Raleigh, between Morgan Street and Cabarrus Street, and that at such time the defendant was the owner of such motor vehicle and was duly registered as such owner with the Motor Vehicle Department of the State of North Carolina and the Licensing Department of the City of Raleigh, and at such time and place the parking meter displayed a sign plainly indicating illegal parking and that the lawful parking period had expired. However, no evidence was offered or admission made tending to show who parked the defendant's car at the time and place set out in the warrant.

It is apparent this is a test case and we are called upon to pass upon the sufficiency of the evidence to support the conclusion that the defendant parked, or allowed his automobile to be parked, in violation of the law as charged in the warrant. The decisive question, therefore, is whether in the absence of any authorized legislative rule of evidence, the mere proof or admission of ownership of the automobile, and that it was parked contrary to the provisions of the traffic ordinance of the City of Raleigh, is sufficient to support an inference that the defendant parked, or allowed the automobile to be so parked, and to sustain a conviction if such inference is not explained or refuted by other evidence. We are not dealing with an inference that may be drawn from circumstantial evidence, but whether an inference of guilt may be drawn from certain admitted or proven facts.

The traffic ordinance of the City of Raleigh contains no rule of evidence to the effect that proof or admission of ownership of a motor vehicle which has been parked in violation of the law, shall be *prima facie* evidence that the owner thereof committed or authorized such violation. In

fact, we know of no law in this State which has delegated to municipalities the right to legislate upon the question of evidence, and of its weight and effect upon the courts.

Some of the authorities in other jurisdictions hold that no *prima facie* rule of evidence, based on ownership, is necessary to support a conviction for the violation of a traffic ordinance. They follow what might be termed the rule of expediency; the inconvenience of keeping watch over parked vehicles to ascertain who in fact operates them, if not the impossibility of such task. *Commonwealth v. Ober,* 286 Mass. 25, 189 N.E. 601; *City of Chicago v. Crane,* 319 Ill. App. 623, 49 N.E. 2d 802. The following authorities also hold that where a parking ordinance has been violated, proof or admission of ownership of the vehicle involved is sufficient to carry the case to the jury and to sustain a conviction in the absence of an explanation or denial on the part of the defendant. *S. v. Morgan* (by an equally divided Court), 72 R.I. 101, 48 A. 2d 248; *People v. Marchetti,* 154 Misc. 147, 276 N.Y.S. 708; *People v. Rubin,* 284 N.Y. 392, 31 N.E. 2d 501. Other Courts have upheld such convictions under the *prima facie* rule of evidence with respect to ownership. *People v. Kayne,* 286 Mich. 571, 282 N.W. 248; *Commonwealth v. Kroger,* 276 Ky. 20, 122 S.W. 2d 1006; *City of St. Louis v. Cook,* 359 Mo. 270, 221 S.W. 2d 468.

The State cites the following decisions of this Court in support of its contention that the verdict below should be upheld. *S. v. Kittelle,* 110 N.C. 560, 15 S.E. 103; *S. v. Smith,* 117 N.C. 809, 23 S.E. 449; *S. v. Morrison,* 126 N.C. 1123, 36 S.E. 329; *S. v. Garner,* 158 N.C. 630, 74 S.E. 458; *S. v. Carter,* 205 N.C. 761, 172 S.E. 415; *S. v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725; *S. v. Brannon,* 234 N.C. 474, 67 S.E. 2d 633.

In the case of *S. v. Kittelle, supra,* this Court upheld the conviction of the defendant, a licensed liquor dealer, where one of his employees sold beer to a minor in violation of the law. The conviction, however, was obtained under a statute which provided that such sale should be *prima facie* evidence of the violation thereof.

We do not consider the cases of *S. v. Smith, supra,* and *S. v. Morrison, supra,* to be in point on the question under consideration. Each of these cases involved an act which was illegal unless the defendant prior thereto had obtained a privilege license from the State authorizing the respective transactions complained of. In all such cases, when the State proves the commission of the act by the defendant, it makes out a *prima facie* case and the burden shifts to the defendant to show he was duly licensed to engage in the business or trade involved. In the instant case, the State seeks to prove by an inference or presumption that the defendant committed the offense complained of simply because he is the owner of the car and not by proof of any act committed by him, or by anyone under his control or by his permission.

In *S. v. Garner, supra,* the defendant was indicted under a statute which provided, "No cattle was to be moved or allowed to move from any quarantined area of this or any other State, . . ." The defendant lived in a quarantined area in Moore County near the Hoke County line. There was no fence between Hoke and Moore Counties. Hoke County was not in the quarantined area. The defendant owned a cow which was infected with cattle fever tick, and permitted her to run at large. As a result she strayed across the line into forbidden territory. The Court held that the act of turning the cow out, "whereby she was permitted to stray, was done purposely and therefore willfully." Likewise, we do not think this case in point. An automobile does not move upon our streets and highways except when operated by some individual. But the owner of the diseased cow knew when he turned her out and permitted her to run at large near the Hoke County line, that in all probability she would do exactly what he was forbidden by law to allow her to do.

In the case of *S. v. Carter, supra,* the defendant was convicted of violating an ordinance of the City of High Point which provided that, "it shall be unlawful for any person, firm or corporation to park any automobile, truck or any motor driven vehicle on the north side of English Street between College Street and Phillips Street . . ." The question presented on the appeal to this Court did not involve the question now before us. The defendant in that case challenged the authority of the City of High Point to adopt and pass such an ordinance. This Court, in upholding the ordinance, said: "All the evidence at the trial of this action shows that the defendant parked his automobile on English Street, between College Street and Phillips Street, in violation of a valid ordinance of the city of High Point."

The case of *S. v. Holbrook, supra,* in keeping with prior decisions of this Court, held that upon an indictment for larceny, possession of the fruits of crime recently after its commission justifies an inference of guilt, and, though only *prima facie* evidence of guilt, may be controlling unless explained or accounted for in some way consistent with innocence. Even so, in such case, the burden is on the State to prove that the goods have been stolen and that the defendant is in possession of them. *Wilson v. United States,* 162 U.S. 613, 40 L. Ed. 1090. However, the recent possession of stolen goods, without more, will not raise an inference or presumption that will support the charge (G.S. 14-71) of receiving stolen goods knowing them to have been feloniously stolen or taken. *S. v. Best,* 202 N.C. 9, 161 S.E. 535; *S. v. Lowe,* 204 N.C. 572, 169 S.E. 180; *S. v. Oxendine,* 223 N.C. 659, 27 S.E. 2d 814; *S. v. Larkin,* 229 N.C. 126, 47 S.E. 2d 697.

The State also, in citing *S. v. Brannon, supra,* points out that where, in a murder trial, it is proved or admitted that the defendant intentionally

killed the deceased with a deadly weapon, the law implies malice, and the defendant is presumed to be guilty of murder in the second degree unless he shows mitigating circumstances to reduce the homicide to manslaughter or excuse it altogether. It will be noted, however, in such a case, the presumption of malice does not arise until it is proved or admitted that the defendant intentionally killed the deceased with a deadly weapon.

Our Court, in the above cases, did not establish or recognize the *prima facie* rule of evidence in the absence of legislative authorization, in the sense or to the extent the State seeks to invoke such rule on the present record. No such rule of evidence or inference has been applied heretofore by this Court to a factual situation such as we have presented on this record. In fact, except in those cases where the *prima facie* rule of evidence has been established by legislative action, no such rule exists in this jurisdiction. Therefore, in order for us to sustain the verdict below, it would be necessary for us to establish a new rule of evidence and to give it retroactive effect.

In the very recent case of *S. v. Lloyd,* 233 N.C. 227, 63 S.E. 2d 150, in an opinion by *Devin, J.* (now *Chief Justice*), this Court held that where several automobiles were being driven upon a public highway at 75 to 90 miles an hour, and one of the automobiles was identified as a Mercury, which the highway patrolman testified belonged to the defendant Lloyd, such testimony was not sufficient to sustain a verdict. The opinion stated : ". . . we are inclined to the view that the defendant's motion for judgment as of nonsuit should have been allowed. Though we observe the rule that on this motion the evidence should be considered in the light most favorable for the State, nevertheless the identification of the defendant Lloyd as the operator of one of the recklessly driven automobiles seems lacking. Hence, we think the judgment should have been reversed, and it is so ordered."

We readily concede that a *prima facie* rule of evidence, as contended for by the State, is desirable for the proper and adequate enforcement of the traffic ordinances of the various municipalities of the State. We think, however, that such rule should be made applicable to parking violations by legislative enactment and not by judicial decree. It is our duty to interpret and apply the law as it is written, but it is the function and prerogative of the Legislature to make the law. *S. v. Welch,* 232 N.C. 77, 59 S.E. 2d 199; *S. v. Suddreth,* 223 N.C. 610, 27 S.E. 2d 623; *Wilson v. Town of Mooresville,* 222 N.C. 283, 22 S.E. 2d 907; *Millwood v. Cotton Mills,* 215 N.C. 519, 2 S.E. 2d 560; *S. v. Revis,* 193 N.C. 192, 136 S.E. 346; *S. v. Means,* 175 N.C. 820, 95 S.E. 912. And where a Court has consistently declined through the years to permit an inference of guilt to be drawn from evidence such as that presented on this appeal, in order to make out a *prima facie* case, a radical departure from such

long established rule of evidence should be authorized by the lawmakers rather than by judicial fiat.

In civil actions in this State for the recovery of property damages or personal injuries sustained in motor vehicle accidents, this Court has never permitted a recovery against a defendant where the sole evidence against such defendant was no more than ownership of the motor vehicle plus the negligence of the driver. We have required, in such cases, that, "to charge the owner of a motor vehicle with the neglect or default of another there must be some evidence of the agency of the driver at the time and in respect to the transaction out of which the injury arose, and that proof of ownership alone is not sufficient to warrant or support an inference of such agency." *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d 586, and cited cases.

The above rule has now been changed by legislative enactment, Chapter 494, 1951 Session Laws of North Carolina, the pertinent parts of which read as follows: "(a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose. (b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any action, be *prima facie* evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment; . . ."

In the case of *Manley v. Georgia,* 279 U.S. 1, 73 L. Ed. 575, it is said: "State legislation declaring that proof of one fact or a group of facts shall constitute *prima facie* evidence of the main or ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. If the presumption is not unreasonable, and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process of law." See also Wharton's Criminal Evidence, Volume 1, Sections 69 and 70.

Except for the rules of evidence which have been expressly sanctioned by the Constitution, such as the privilege against self-incrimination, the accused's right of confrontation, or cross-examination of opposing witnesses, etc., "the Legislature has the power to alter or create any rule of evidence. This is so for reasons inherent in the nature of legislative functions." Wigmore on Evidence, Volume 1, Section 7, page 208, *et seq.* The same authority, in Volume 4, Section 1356 (a), page 724, states:

"A rule of presumption is simply a rule changing one of the burdens of proof, *i.e.,* declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced . . . There is not the least doubt, on principle, that the Legislature has entire control over such rules, as it has (when not infringing the Judiciary's prerogative) over all other rules of procedure in general and evidence in particular . . . subject, only to the limitations of the rules of evidence expressly enshrined in the Constitution."

It has been a common practice of our Legislature to declare that proof of one or a group of facts shall constitute *prima facie* evidence of the main or ultimate fact in issue if there is a rational connection between what is proved and what is to be inferred. Among many of these instances are: (1) That the possession of more than one gallon of spirituous liquor at any one time shall constitute *prima facie* evidence that it is kept for the purpose of sale, G.S. 18-32; (2) that it is unlawful to have possession of any alcoholic beverages upon which the taxes imposed by law have not been paid, "and the possession of any alcoholic beverages in a container which does not bear either a revenue stamp of the federal government or a stamp of any of the county boards of the state of North Carolina shall constitute *prima facie* evidence of the violation of this section," G.S. 18-48; (3) that possession of lottery tickets shall be *prima facie* evidence of the violation of the provisions of G.S. 14-291.1; (4) that any one (not an officer or soldier on duty), not being on his own land, shall have about his person a deadly weapon, such possession shall be *prima facie* evidence of the concealment thereof, G.S. 14-269; (5) that an administrator or executor's account, when filed and approved, shall constitute *prima facie* evidence of its correctness, G.S. 28-117; (6) that a recital in a deed, shall be presumed to be *prima facie* correct, G.S. 28-103; (7) that when land is sold to create assets to pay a decedent's debts and the record does not show what disposition was made of the funds, "then it is presumed, *prima facie,* that the proceeds of the sale" have been properly applied, G.S. 28-101; (8) that "vouchers are presumptive evidence of disbursement, without other proof, unless impeached," G.S. 28-119; (9) that the transfer of property under certain circumstances, shall be deemed to have been made in contemplation of death, G.S. 105-2; (10) that killing of livestock by an engine or cars running upon any railroad, "shall be *prima facie* evidence of negligence on the part of the railroad company in any action for damages against such company," G.S. 60-81.

If no inference or presumption is permitted to be drawn from the ownership of a motor vehicle and its negligent operation by another, in the absence of a legislative rule of evidence, in a civil action, where the plaintiff is only required to carry the burden of proof, by the greater

weight of the evidence, or by the preponderance thereof; we should not, in the absence of a legislative rule of evidence to the contrary, consider mere ownership of a motor vehicle, parked in violation of a city ordinance, and no more, sufficient to sustain a criminal conviction which must be proved beyond a reasonable doubt.

The judgment of the court below is

Reversed.

BARNHILL, J., concurring: In my opinion this is not a case of circumstantial evidence in which the only question is whether the circumstances proven will support the inference that defendant is the person who parked his automobile in the parking space here involved and left it standing there for more than one hour in violation of the ordinance. The evidence is direct and positive. An automobile was parked in a one-hour parking space on Fayetteville Street. The vehicle belonged to defendant, was registered in his name, and bore his license plates. The meter registered overtime parking. This testimony presents the simple question: Is proof that defendant is the owner of an automobile which was parked overtime, and nothing more, sufficient to overcome the presumption of innocence and support his conviction on a charge of overtime parking? If so, it was sufficient to be submitted to the jury. If not, the demurrer to the evidence should have been sustained.

The majority opinion fully supports the conclusion that the evidence does not have sufficient probative force to require its submission to a jury and cites analogous cases in which we have come to the same conclusion. I merely wish to discuss briefly the question of expediency and necessity raised by the dissent.

It is suggested in the first place that the facts here offered in evidence created in the mind of the police officer who tagged defendant's automobile the conviction that defendant was the person who parked the vehicle; that it "carried the case to the jury" in his mind. As a matter of fact, the officer did not know or care whose automobile it was. It was parked overtime and he tagged it and so reported to the city traffic department. That department ascertained the name of the owner and issued the citation.

Let us concede, however, that the facts discovered by the officer "carried the case to the jury" in his mind. Even so, we cannot afford to set our judicial sights by the sidewalk opinion of a policeman. Such officers generally are good citizens and faithful public servants. But their casual opinions, formed as they go about their business of enforcing the law, are no proper guide for us.

The minority opinion makes out a good case for those who conceive that it is the province of the courts, by judicial construction, to engraft

on inadequate legislation provisions necessary to make it effective; to point the way to social reform; and to provide the rules for the elimination of the evils created by our complex civilization. For us to hold that the mere proof that defendant owned the automobile that was parked overtime is insufficient will, in effect, strike down the ordinance, or at least render it unenforceable and "leave unregulated motor traffic not only in Raleigh but in practically every city and town in North Carolina." So it is argued. The long and short of it is that it is expedient for us to act now and save the impending situation.

Emergency and necessity are the magic words that lure courts into the legislative field. But neither emergency nor necessity creates power or confers jurisdiction.

When the fiction of a presumption in the form of a rule of evidence is, as here, required to relate the facts proven to, and make them *prima facie* evidence of, the ultimate facts sought to be established, the rule of evidence must be created by legislative Act and not by judicial decree. So far as I have been able to ascertain, this Court has always recognized this to be the law and has never in the past undertaken to create such a rule.

Furthermore, there is nothing in the record to indicate that any defendant at any time in any court of this State has been convicted on a charge of parking overtime in a trial in which the presumption or *prima facie* rule here involved was applied against him. Certainly it is not a matter of common knowledge that the rule is generally applied in trial courts to such an extent that we may take judicial notice thereof.

The prerogative of this Court is to interpret and apply the law—never to make it. This we should ever keep in mind, for our sense of self-restraint is the only check upon our exercise of power. We may rejoice in the accomplishments of our Court only so long as we maintain, in letter and spirit, the division of the great functions of government written into our Constitution which is the best security for a government of laws and the only safeguard against a return to a government of men.

It is true courts of other states have, at times, yielded to the temptation to usurp the functions of the legislative branch of government by engrafting on the law rules of evidence and other provisions deemed necessary to meet the problems of the day. Unfortunately, that is the trend of modern decision in a number of our courts. One, at least, in recent years, has played ducks and drakes with precedents of long standing and has virtually rewritten several sections of our Federal Constitution so as to accord with its concept of the need for social reform created by the complexity of modern civilization. It has sought, assiduously and with some success, to engraft its own philosophy of government upon the body of the law. As a result, the divergent views of its members as expressed in the numerous concurring and dissenting opinions filed, have created con-

STATE *v.* SCOGGIN.

fusion and uncertainty in the law to such an extent as to cause the court to lose much of the respect and confidence the people had, and should always have, for that high tribunal. We must not be led astray by the examples set by these courts whose anxiety to meet the problems of the day have led them across the bounds which delimit judicial action.

Surely we could now prescribe the rule of evidence which would create the required presumption, give it retroactive effect, and affirm the conviction of defendant. No doubt such action would command the approval, perhaps the applause, of many citizens who are not close students of the division of powers incorporated in our system of government. But for us to do so would create a precedent which would rise up to plague us in the future. One departure from the realm of the judicial would lead to another. Therefore, neither the emergent situation nor the example set by some other courts should tempt us to undertake to discharge the duties assigned to the lawmaking branch of our government.

We need fear no calamitous results from this decision. Parking regulations were enforced long before the advent of meters. They are now enforced in acceptable manner in areas where no meters are used. Meters are mere silent watchmen. Police officers are still required to check them and tag the cars. The "mark and watch method" which has been effective in the past is still available.

In this connection I call attention to the fact a bill to create the exact presumption or rule of evidence here proposed was submitted to and rejected by the last General Assembly. Senate Bill 257. See House Journal, Session 1951, p. 553. The municipalities of the State appealed first to the proper forum for legislation establishing a rule of evidence which would materially facilitate the enforcement of parking ordinances. Having failed there, they now appeal to the courts. If confusion does follow our disposition of the appeal, responsibility will not lie at our door.

However urgent the situation may be, it must await action by the only agency of government authorized to make the law. In the meantime, it is our duty to reverse the verdict and judgment entered in the court below.

DEVIN, C. J., dissenting: It was admitted that the ordinance of the City of Raleigh regulating the parking of automobiles in congested areas of the city, enacted pursuant to power conferred by the General Assembly, was in full force and effect at the time the defendant was charged with overtime parking in violation of this ordinance. Neither the constitutionality nor the propriety of the one hour parking limit was brought in question.

The ordinance contains this provision: "It shall be unlawful for any person to cause, allow, permit, or suffer any vehicle registered in his name,

or under his control, to be parked overtime or beyond the lawful period of time."

The defendant admits that at the time and place alleged in the warrant, in a space duly designated and marked in accordance with the ordinance, the automobile belonging to him and duly registered in his name and bearing his identifying license plates issued by the State and city, was parked for an overtime period in violation of the ordinance. Upon evidence offered to this effect, and with no evidence *contra,* the defendant was found guilty of violating the ordinance.

The only question raised is whether these facts afford any evidence of sufficient probative value to be submitted to the jury on the question of violation of the ordinance by the defendant. According to the majority opinion these facts are insufficient to raise an inference—a permissible deduction from the facts shown—that the admittedly unlawful parking of an automobile admittedly belonging to the defendant, was caused or permitted by him, or by his authority, or by someone for whom he was legally responsible.

The principal ground upon which the majority opinion rests is that there is no legislative enactment specifically declaring that these facts constitute *prima facie* evidence of guilt.

Numerous decisions have been written by this Court defining the meaning and extent of the phrase *prima facie* evidence. The epitome of these decisions is aptly stated by *Chief Justice Stacy* in *Vance v. Guy,* 224 N.C. 607: "A *'prima facie* case' means and means no more than evidence sufficient to justify, but not to compel an inference of liability, if the jury so find." Is there such a relation between the facts admitted and the ultimate fact to be established as to authorize but not require the jury to find that fact? Or, as stated by Mr. Wigmore, are the facts in evidence such as would justify men of ordinary reason and fairness in affirming the question at issue? But I think we have here not so much a question of statutory presumption or inference as a matter of circumstantial evidence. A shoe track identified as having been made by the defendant's shoe at the time and place of the crime is competent against him without having to negative the possibility that someone else may have borrowed and worn his shoe. Likewise, possession of stolen goods shortly after the larceny raises an inference deducible from those facts that the possessor is the thief. *S. v. Weinstein,* 224 N.C. 645. The salutary rule that in criminal actions the evidence must satisfy the jury beyond a reasonable doubt is one for the guidance of the jury and not the court. The court's province is to decide whether there be any evidence, more than a scintilla, of the defendant's guilt. If there is, it becomes a case for the jury.

When the policeman tagged the defendant's automobile for overtime parking and notified him to appear in court to answer the charge that he had caused or permitted his automobile to be parked overtime, he acted on the same facts as we now have before us. The inference properly deducible from these facts, nothing else appearing, created in his mind the conviction that the defendant's automobile, identified by his individual license plates, was parked overtime in the limited area by the defendant's act or with his knowledge and consent. It "carried the case to the jury" in his mind, and so would it in the mind of the average man on the street. The facts here shown, unexplained and unrebutted, should not be dismissed as having no probative force.

The purpose of evidence is the ascertainment of truth as the basis for the administration of justice. It is a step in the process of persuasion. The rules of evidence as we have them today do not depend upon legislative authority. From the beginning, certainly since the advent of trial by jury upon the testimony of witnesses, the rules as to the competency, *quantum* and legal effect of evidence have been in large measure crystallized from the decisions of the courts, based on reason and human experience. In more recent times these rules have been sanctioned, altered, amended or abrogated by statute. But specific legislative authority is not essential to determine the competency or legal effect of evidence. Many rules of evidence applicable to particular circumstances have been established in the absence of statute.

The only reference to be found in our statute on the question of inferences or permissible deductions from the ownership of an automobile is contained in Chap. 494, Laws 1951, which makes ownership of an automobile *prima facie* evidence that it was being operated at the time of an accident by or for the owner, and that the person operating it was acting for the owner and in the scope of his employment. True, this only applies to civil actions, but it is expressive of the legislative will that the owner of an automobile should be held to answer for infractions of the rules of civil conduct caused by the agency he has set in motion, without being permitted to escape by reason of the absence of more specific evidence impracticable to obtain. If ownership be evidence to hold him for a civil injury, why not also for an injury to the State and the city?

Here we must consider, in addition to admitted ownership of the illegally parked automobile, the language of the ordinance which makes it unlawful to "permit" a vehicle "registered in his name" to stand—to remain—in a prohibited area, for an unlawful period of time.

Many of the rigid rules of the common law and those prescribed by statute have given way to a more liberal interpretation, as conditions and circumstances change, in obedience to reason and the common experience of men. Indeed, some of the rules now in force in North Carolina might

well be re-examined. A million and a quarter motor vehicles traverse the streets and highways of the State, and doubtless in time all of them seek a place to park somewhere on a public street. Raleigh has probably 20,000 vehicles belonging to its citizens, plus a substantial increment from daily visitors. Considering the limited areas for business and shopping, interminable confusion, discrimination, and injustice would result but for a definite and well understood means of regulating traffic and parking. To strike these provisions down by invoking a rule of evidence of doubtful application would have the effect of nullifying the ordinance and would practically destroy the power to enforce it, and would leave unregulated motor traffic not only in Raleigh but in practically every city and town in North Carolina. That the Legislature did not append a rule of evidence to the power conferred on the city ought not be held to destroy its effectiveness. The General Assembly doubtless acted on the assumption that the courts could handle traffic law violations without the necessity of legislative enactment prescribing additional rules of evidence. The absence of such a rule should not render the ordinance futile.

To hold this evidence sufficient under the circumstances here shown to go to the jury would offend no constitutional provision. It would serve to conform to the consensus of judicial authority and to the practical interpretation of an act almost universally observed. For ten years and more, and until shortly before the appeal in this case was undertaken, the enforcement of the ordinance was unquestioned, and evidence such as here shown was deemed sufficient to make a *prima facie* case. This has been the practically universal rule so far as I know of municipal authorities and municipal courts in this State and throughout the country.

This is the first case to come to this Court, but the question has been considered by courts of last resort in other states, and these with singular unanimity have sustained conviction for parking violation on similar evidence. The diligence of counsel for the defendant has resulted in finding only eight reported cases on this question from seven different states, *viz.:* Massachusetts, New York, Rhode Island, Illinois, Kentucky, Michigan, and Missouri, all of which have reached practically the same conclusion. Not a single one of these cases supports the defendant's view. The decisions referred to are from courts of recognized authority, and while not compelling here are persuasive, and suggest to my mind that the reason underlying those decisions ought to prevail here.

Let us briefly examine those cases and the reasons for the conclusions reached.

In *Commonwealth v. Ober*, 286 Mass. 25, the conviction of the defendant for violation of a traffic regulation almost identical with ours, and upon evidence that an automobile registered in the name of defendant was parked overtime in a limited area, was upheld. The Court said:

"The reported evidence established a *prima facie* case which was not met by evidence offered by the defendant."

In *People v. Rubin*, 284 N.Y. 392, for violation of a similar ordinance and on substantially the same evidence conviction of the defendant was sustained. In answer to the defendant's contention that there was no direct proof that the unlawful parking was done by the defendant, the Court said: "To rule that this inference may not be drawn from the established facts would be to deny to the trier of the facts the right to use a common process of reasoning." Proof of ownership and unlawful parking was thought to afford a sufficient basis for the inference of personal conduct.

In *City of Chicago v. Crane*, 319 Ill. App. (1943), 623, conviction of the defendant for parking near a fire hydrant was upheld upon showing that the automobile so parked in violation of the ordinance belonged to the defendant and bore his license plate. The Court said: "When it appeared from the stipulation of facts that defendant owns the car that was parked near the fire hydrant, the City made out a *prima facie* case against him," citing the Massachusetts, Kentucky, Michigan, and New York cases.

In *People v. Marchetti*, 276 N.Y.S. 708, it was held that upon evidence of ownership of the automobile and its legal parking the prosecution could rest the case upon a presumption that the operation was by the owner. The Court said: "Presumption need not always be provided for by statute."

In *Commonwealth v. Kroger*, 276 Ky. 20, 122 S.E. 2d 1006, where conviction was upheld, there was a proviso in the ordinance that overtime parking of an automobile should be *prima facie* evidence that the violation of the ordinance was committed by the owner, but it was held that without that proviso in the ordinance the conviction would have been upheld. The Court said: "Independently of the enacted presumption, the circumstances (similar to those here) stipulated and agreed to are amply sufficient under the general law of evidence—of ancient and uninterrupted declaration—to support a conviction or the establishment of the principal fact by circumstantial evidence."

In *People v. Kayne*, 286 Mich. 571, it is interesting to note that the evidence showed that of the automobiles found parked overtime in Detroit 95.6% had been parked by the owner or by an immediate member of his family. In that case conviction for overtime parking was sustained, but there the state had the benefit of a statute that registration plates displayed on the automobile constituted a *prima facie* presumption that the owner parked the automobile.

In *City of St. Louis v. Cook*, 359 Mo. 270, conviction for parking in violation of the ordinance was upheld, but there the ordinance provided

that the presence of a vehicle in violation of the ordinance was *prima facie* evidence that the person in whose name registered had committed the act. The Court, however, called attention to the cases in which it was held that independent of such a rule of evidence the inference that the owner was responsible for unlawful parking was reasonable and sufficient.

In *State v. Morgan*, 72 R.I. 101, the conviction of the defendant for violation of a traffic regulation on proof only that his automobile was parked illegally was upheld, the Court being evenly divided in opinion on the question of the sufficiency of the proof that the automobile was parked by or for the defendant.

The case of *S. v. Lloyd*, 233 N.C. 227, is cited in the majority opinion in support of the position taken. In that case involving the question of the identity of the driver of a speeding automobile nonsuit was sustained. But it will be noted that evidence of the defendant's ownership of the automobile in that case was coupled with evidence, offered by the State, that the defendant denied he was present at the time of the offense charged but was in the city of Durham.

This precise question has never been heretofore considered by this Court, but it seems that in other jurisdictions upon the same facts as here admitted, the courts of last resort there have found no difficulty in sustaining convictions for violation of traffic regulations. I had hoped this Court might be influenced by the same reasoning to reach the same conclusion. There is ground for apprehension that the result of the decision in this case on efforts to enforce traffic regulations will be unfortunate, not only in Raleigh but in every city and town in the State in which ordinances have been adopted and enforced to cope with the problem in the public interest. The city has no means of avoiding this situation, for it is not endowed with power by ordinance to prescribe a rule of evidence for the courts. It is suggested that the remedy lies with the General Assembly, but nearly a year must elapse before a new rule of evidence in such cases can be promulgated. In my opinion it is within the power of this Court to declare the legal inferences deducible from the facts proven as applicable to cases of this kind, in view of the nature of the offense, the public purpose sought, and the impracticability of obtaining better evidence. There is a rational connection between the ownership of an automobile for which individual license to operate upon the public streets has been granted, and the actual use of it by the owner in the operation and parking of that automobile which should justify the inference deducible from that ownership, when the automobile is shown unlawfully parked, that this was caused or permitted by or for the owner.

It has been said that parking meters are silent policemen, but unfortunately they cannot testify in court, and we must depend upon circumstantial evidence for the enforcement of these regulations.

STATE *v.* SCOGGIN.

The courts do not make the laws nor do they declare public policy. Their decisions are based on principles of law regardless of the outcome, but while conforming to these principles consideration should be given any sound reason which would authorize the exercise of police power in the interest of good order and public safety. Laws are the tools the community uses to effectuate its ideals, and these tools should not be rendered ineffectual save for reasons which are sound and incontrovertible.

In view of the importance of the enforcement of the traffic regulations adopted by the City of Raleigh to prevent public mischief, whether the facts admitted be regarded as making out a *prima facie* case, or permitting a reasonable inference of guilt, or as affording circumstantial evidence which should carry the case to the jury, in my opinion the Court should hold that they were sufficient to warrant consideration by the jury, and, in the absence of evidence *contra,* to support the verdict and judgment. My vote is that the judgment below should be affirmed.

JOHNSON, J., dissenting: The *prima facie* rule with which we are dealing is not a creature of the Legislature. It is of judicial origin under application of the scintilla doctrine, as a limitation on jury trial. In basic theory, it is for the Court to determine, rather than for the Legislature to prescribe, what does or does not constitute a *prima facie* case.

The books are full of decisions of all sorts in nonsuit cases, civil and criminal, applying the scintilla rule as part and parcel of the doctrine of *prima facie* case as designed wholly and solely by judicial handiwork, with no semblance of any statutory rule of evidence or fixed legislative presumption coming into play.

Therefore, assuming, as seems to be conceded in the majority opinion, that the formula needs change to fit the situation here presented, it seems to me that the Court should do the job.

My vote is to affirm in accordance with the views expressed in the dissent of *Chief Justice Devin.*