State v. Phillips

———————————

STATE OF NORTH CAROLINA v. TRAVIS OSBORNE PHILLIPS

No. 8724SC722

(Filed 2 February 1988)

1. Narcotics § 1.3 — coffee as food or eatable substance

Coffee is a food or eatable substance within the meaning of N.C.G.S. § 14-401.11(a), which prohibits placing a controlled substance in a position of human accessibility.

2. Criminal Law § 73 — placing LSD in coffee — hearsay statement of coconspirator — admissible

The trial court did not err in a prosecution for placing LSD in a pot of coffee at a restaurant at Appalachian State University by allowing a witness to testify that a coconspirator had said "we are going to do this." Statements made in reassurance that the transaction which is the subject of the conspiracy will indeed occur are made in furtherance of the conspiracy and are therefore admissible as an exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 801(d)(E).

3. Criminal Law § 102.7 — putting LSD in coffeepot — argument by prosecutor — no error

In a prosecution for putting LSD in a coffeepot at Appalachian State University, the district attorney's closing argument concerning his opinion as to who was telling the truth and his personal reasons for granting concessions to both of the alleged codefendants did not rise to the level of prejudice which would require the granting of a new trial.

4. **Criminal Law § 138.8— sentencing—victim impact statements—violation of constitutional rights**

   While N.C.G.S. § 15A-825 specifically authorizes the use by the trial court of victim impact statements, that statute cannot supersede defendant's constitutional right to confront and cross-examine witnesses against him; a defendant must therefore be given a reasonable notice and knowledge of the statements that are to be used against him during the sentencing phase so that he may have the opportunity to call to the sentencing hearing the victim or other party making the written statement. If defendant does not wish to call the party, he then waives his right to cross-examine that party at the hearing and the district attorney may present the statements as allowed by statute. Sixth and Fourteenth Amendments to the U. S. Constitution, Art. I, § 17 of the North Carolina Constitution.

APPEAL by defendant from *Griffin (Kenneth A.), Judge.* Judgment entered 27 February 1987 in Superior Court, WATAUGA County. Heard in the Court of Appeals 13 January 1988.

On 12 May 1986, defendant, Brian Patrick Truitt, Stephen Gregory Travis and two others were at Truitt's apartment in Boone, North Carolina. While at the apartment, they took Lysergic Acid Diethylamide (LSD) which defendant had received in the mail from California. Early the next morning, defendant and Stephen Travis discussed doing something "outrageous" because it was the end of the school year. Stephen Travis suggested that they put LSD in a pot of coffee at the Sweet Shop, a restaurant located on the campus of Appalachian State University. Defendant and Stephen Travis diluted the LSD into a cup of boiling water. Defendant and Travis then started to walk out of the apartment and Travis said "we are going to do this." Truitt testified at trial that he told defendant and Stephen Travis that what they were going to do was wrong and he wanted no part of it. Defendant and Stephen Travis then left Truitt's apartment and went to the Sweet Shop. Travis later called Truitt and asked him to bring a newspaper to the restaurant. Brian Truitt took the paper to the Sweet Shop but left soon thereafter. While Truitt was there he noticed that defendant and Travis still had the cup containing LSD liquid.

At least eight people drank the coffee at the Sweet Shop that morning and had drug induced hallucinations. Two of the eight drove vehicles after consuming the coffee and some had to be hospitalized. The coffee in one of the cups sold to a customer was analyzed and found to contain LSD.

Defendant was indicted by a grand jury and charged with placing a controlled substance in a position of human accessibility in violation of G.S. 14-401.11(a)(2) and possession of a controlled substance in violation of G.S. 90-95(a)(3). Brian Truitt testified at the trial under a grant of immunity. Defendant was found guilty of both counts. At the sentencing hearing, the State produced evidence that defendant had three previous convictions. The State, through the district's Victim-Witness Assistant Ben Blackburn, also presented victim impact statements from two of the parties who consumed the coffee on the morning of 13 May 1986. Blackburn also testified concerning economic losses suffered by some of the victims and Appalachian State University.

Defendant was sentenced to a term of ten years imprisonment for his conviction of violating G.S. 14-401.11(a)(2), seven years in excess of the presumptive term. For his conviction of violating G.S. 90-95(a)(3), defendant received a sentence of five years in prison, three years more than the presumptive term. From this judgment, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Louis D. Bilionis, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first contends that the State failed to prove a crime under G.S. 14-401.11(a)(2) because coffee is not a "food or eatable substance." We disagree.

G.S. 14-401.11(a) states that

It shall be unlawful for any person to knowingly distribute, sell, give away or otherwise cause to be placed in a position of human accessibility, any food or eatable substance which that person knows to contain:

*       *       *       *

(2) Any controlled substance included in any schedule of the Controlled Substances Act.

Defendant's argument that coffee is a "beverage" and not a "food or eatable substance" is unpersuasive.

> The word "food" is a very general term and applies to all that is eaten for the nourishment of the body. . . . The term has been held to include . . . *coffee grounds* . . . and numerous other articles used for entering into the composition of, or intended as an ingredient in, the preparation of food for man.

35 Am. Jur. 2d *Food* § 1 (1967) (emphasis added). Implying that the mixture of coffee grounds and water does not create a food item pursuant to the statute is ridiculous. The legislature obviously intended for a beverage such as coffee to be included within the State's definition of "food or an eatable substance." Defendant's argument is totally without merit.

[2]  Defendant also contends that the trial court erred in allowing Brian Truitt to testify, in violation of the hearsay rule, that as defendant and Stephen Travis were leaving Truitt's apartment, Stephen Travis stated "we are going to do this." We disagree.

"A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." G.S. 8C-1, Rule 801(d)(E). Defendant argues that this statement was not "in furtherance of the conspiracy" and thus was inadmissible. Statements made in reassurance that the transaction which is the subject of the conspiracy will indeed occur are made in furtherance of the conspiracy. *State v. Lipford*, 81 N.C. App. 464, 344 S.E. 2d 307 (1986). Stephen Travis's statement "we are going to do this" involves such reassurance. The trial court did not err in admitting the statement.

[3]  Defendant next contends that "by permitting the District Attorney to argue, over objection, (A) His personal opinion that Brian Truitt was telling the truth and (B) His personal reasons, unsupported by the evidence, for granting concessions to both of the alleged codefendants, the trial court committed reversible error." We disagree.

At trial, defendant objected to the following portion of the district attorney's closing argument:

Now, Ladies and Gentlemen, you're citizens of our community, and you have a right for public officials such as myself to give you an accounting of my activities. And let me ask you this, a few questions. If this case had happened and if you were charged with the responsibility of overseeing an investigation and trying to solve it, a crime so terrible as this, and if it got to the point where it appeared to you in order to solve a crime that the honest people, those who were altogether innocent, knew nothing, and that the confederacy of criminals must somehow be penetrated, then what would you have done? Would it have been reasonable for you to say among the three possibilities, Truitt, Phillips, or Travis, which one was most likely to be receptive to a grant of immunity?

Mr. Phillips has pleaded not guilty, in effect saying I didn't do anything.

Mr. Travis said, I did part of it, but not all. Be the judge of what he says.

And the other person appeared receptive to come here and tell us things. I thought that was a valid consideration when this decision was made among the three possibilities, which person appeared more receptive. And I thought it was a legitimate thing for me to consider among the three possibilities, who is most likely to tell the truth, and I made a decision. That's very much an issue now in something that you need to decide. Among the three possibilities, and there were only three, Truitt, Phillips, and Travis, who was most likely to tell the truth.

You have before you the comparison, the ability to compare what Travis said. You heard his testimony. We made a plea arrangement with him which in effect required him to come here, and I did so for several purposes, one of which I thought it very relevant that you hear from the Defendant, and the only way that I—I can't make a Defendant testify, but the only way we can is let him plead to one, and testify truthfully, and it happened.

So you have now the basis of comparing. Do you believe Truitt more so than Travis? I made a decision based on how

we—those of us who worked with this case, visualized who was most likely to tell the truth.

MR. SPEED: I object to his testimony, Your Honor.

THE COURT: Sir?

MR. SPEED: I'd object to his testimony during his argument.

THE COURT: Objection overruled.

These statements by the district attorney do not rise to the abusive and inflammatory level creating such prejudice which would require the granting of a new trial for defendant. *See State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971). Defendant's contention is without merit.

[4] Defendant's final contention deals with the use of victim impact statements during the sentencing phase of the trial. Defendant argues that "the court, by unquestioningly receiving and considering victim impact statements offered at sentencing in documentary and testimonial form, erred in violation of the defendant's right to due process, his right to confrontation, and his rights under the Fair Sentencing Act."

G.S. 15A-825 directly allows for and, in fact, encourages the use of victim impact statements.

> To the extent reasonably possible and subject to available resources, the employees of law-enforcement agencies, the prosecutorial system, the judicial system, and the correctional system should make a reasonable effort to assure that each victim and witness within their jurisdiction:

> \*   \*   \*   \*

> (9) Has a victim impact statement prepared for consideration by the court.

G.S. 15A-825. The use of victim impact statements, however, is not without limitation.

G.S. 15A-1334(b) specifically states that at the sentencing hearing "[t]he defendant and prosecutor may present witnesses and arguments on facts relevant to the sentencing decision *and*

*may cross-examine the other party's witnesses.*" (Emphasis added.) Also, it is well established in North Carolina that "[a]ll information coming to the notice of the court which tends to defame and condemn the defendant and to aggravate punishment should be brought to his attention before sentencing, and he should be given full opportunity to refute or explain it." *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962). Further, the Sixth Amendment right to confront witnesses and cross-examine them is a fundamental right made applicable to the states by the Fourteenth Amendment. U.S. Const. amends. 6 and 14; *State v. Bumper*, 275 N.C. 670, 170 S.E. 2d 457 (1969). The "law of the land" guaranteed by Article I, Section 17 of the North Carolina Constitution is synonymous with "due process" and it preserves the right of confrontation and cross-examination to an accused party. *State v. Gaiten*, 277 N.C. 236, 176 S.E. 2d 778 (1970).

Allowing a district attorney to conceal victim impact statements until the sentencing hearing where the victim or other party in the written statement may not be at the hearing would be in direct conflict with a defendant's established rights. The legislature has the authority and power to create or alter any rule of evidence *except* those which have been expressly sanctioned by the Constitution such as the right of confrontation or cross-examination of opposing witnesses. *State v. Scoggin*, 236 N.C. 19, 72 S.E. 2d 54 (1952). More directly, while G.S. 15A-825 specifically authorizes the use by the trial court of victim impact statements, this statute cannot supersede defendant's constitutional right to confront and cross-examine the witnesses against him.

Realizing that these statements can be introduced at the sentencing hearing without the victim actually being present, we hold that in order to preserve a defendant's constitutional right to confrontation and cross-examination, a defendant must be given reasonable notice and knowledge of the statements that are to be used against him during the sentencing phase. This would allow a defendant time to gather evidence for refutation. It would also give a defendant the opportunity to call to the sentencing hearing the victim or other party making the written statement, thus allowing him his right to confront and cross-examine. If the defendant does not wish to call the party, then he waives his right to cross-examine that party at the hearing and the district

attorney may present the statements to the court as allowed by statute.

By way of dicta, we emphasize that in the case *sub judice* we fail to see how defendant was prejudiced by the trial court's action. However, to hold otherwise would violate the fundamental fairness standard implicit in the due process clause of the Fourteenth Amendment.

This case is remanded for a new sentencing hearing where defendant shall have reasonable advance notice of what will be used against him.

No error at trial; remanded for resentencing.

Judges WELLS and SMITH concur.