STATE v. L. E. REVIS.

(Filed 26 January, 1927.)

1. **Statutes—State Policy—Convicts—Punishment—Constitutional Law.**

The policy of the State involving the power of the Legislature to authorize corporal punishment to be administered to refractory or unruly convicts sentenced to work on the county roads, is for the Legislature to determine, and whether there is any constitutional restraint thereon, is a matter for the courts to decide.

2. **Constitutional Law—Convicts—Corporal Punishment—Statutes.**

Where a public-local law provides for whipping to be administered to convicts sentenced to work upon the roads as an extreme necessary

means to enforce discipline, safeguarded in respect to its being humanely administered after due notice to the offender, under proper rules and regulations, with report to the commissioners of the county to which the local law applies, making it a misdemeanor for the one designated to do so brutally or without mercy: *Held*, the statute is not inhibited by any provision of our Constitution and is a valid enactment. C. S., 7723, 7728; Constitution, Art. XI, sec. 1.

APPEAL by defendant from judgment rendered on a special verdict by *Stack, J.,* at August Term, 1926, of BUNCOMBE.

Criminal prosecution tried upon an indictment charging the defendant with an assault upon one Lee Cody, 16 August, 1926.

It was shown on the trial:

1. That the defendant is now, and has been for the past six years, superintendent of the prison camps of Buncombe County.

2. That all prisoners confined in the prison barracks or prison camps of said county are divided into three classes, based on their conduct, as follows:

"Class A. Shall include all those prisoners who have given evidence that they will, or who it is believed will observe the rules and regulations and work diligently and are likely to maintain themselves by honest industry after their discharge.

"Class B. Shall include those prisoners who have not as yet given evidence that they can be trusted, but are competent to work and are reasonably obedient to the rules and regulations of the institution.

"Class C. Shall include those prisoners who have demonstrated that they are incorrigible, have no respect for the rules and regulations and seriously interfere with the discipline and effectiveness of the labor of the other prisoners."

This classification is identical with that set out in C. S., 7723, for the governance of penitentiary convicts.

As a reward for good behavior, prisoners are entitled to be promoted from a lower to a higher class with progressively larger freedom; and, as evidence of demerit for bad conduct, they are subject to demission from a higher to a lower class.

3. That only convicts assigned to "Class C," under the above rules, are subject to corporal punishment as provided by chapter 328, Public-Local Laws 1923, and only then after all other means of discipline have failed of proper results.

4. That Lee Cody was convicted of highway robbery, assault, and prison breach, sentenced to the common jail of Buncombe County for a term of twelve months and assigned to work upon the public roads of said county, and on 22 March, 1926, was sent to the prison camp of which the defendant is superintendent.

5. That on or about 1 July, 1926, the said convict, who was strong and able-bodied, well and capable of working, having previously been assigned to "Class C," as above designated, became mutinous and unruly, refused to work or labor as he was required to do, refused to obey orders of the guards (used obscene language in the hearing of women travelers on the highway), declined to observe the prison rules, and contended that the superintendent had no right to whip him or to discipline him for his misconduct.

6. That the rules of the camp, adopted and promulgated by the county board of commissioners, under authority of and agreeable with the provisions of the statute, were well known to the recalcitrant prisoner, and he was duly warned of the results to follow if he continued to persist in his course of mischievous wrongdoing.

7. That after all other means of discipline had failed, it being apparent that the prisoner, by his unruliness, was determined to test the right of the defendant to whip him, thereby rendering it necessary to do so in order to maintain authority in the camp, the defendant, in strict conformity with the provisions of the statute and the rules adopted in pursuance thereof, proceeded to whip the prisoner privately, in the presence of two persons of good moral character, with a leather strap two feet in length, two inches wide and one-eighth of an inch thick, striking the prisoner, who was dressed in his prison clothes, six licks across his back and hips.

8. That the whipping so administered was not done in a cruel or unmerciful manner.

9. That the superintendent made and kept a record of the offenses for which the prisoner was whipped, the number of blows inflicted, the names of the witnesses present, and reported the same, within ten days thereafter, to the board of commissioners of the county for preservation as a public record and to be kept open to public inspection, as required by the statute.

Upon the facts found and declared by the jury, a special verdict of guilty was rendered under appropriate instructions from the court, not because the whipping was cruel or unmerciful, but for the reason that, in the opinion of the presiding judge, all corporal punishment of convicts is illegal, even when administered under statutory authority and in strict compliance therewith. From the judgment entered on the verdict, the defendant appeals, assigning error. C. S., 4649.

*Attorney-General Brummitt* and *Assistant Attorney-General Nash for the State.*

*J. W. Haynes* and *Mark W. Brown* for defendant.

STACY, C. J., after stating the case: The immediate question presented is whether the Legislature has the power to authorize the whipping of convicts as a necessary means of discipline in the management of able-bodied men convicted of crime and assigned to work on the public roads of Buncombe County. In its ultimate effect, the case involves the power of the Legislature to deal, in a similar manner, with the management of incorrigible and unruly convicts throughout the State. The constitutionality of sections 8 and 9 of chapter 328, Public-Local Laws 1923, is the only point raised by the appeal.

Let it be observed in the outset that the question for decision is not one of wisdom or policy, but one of power. The Legislature alone may ·determine the policy of the State, and its will is supreme, except where limited by constitutional inhibition, which exception or limitation, when invoked, presents a question of power for the courts to decide. *Marbury v. Madison,* 1 Cranch, 137. But even then the courts do not undertake to say what the law ought to be; they only declare what it is. *Wood v. Braswell,* 192 N. C., 588. To interpret, expound, or declare what the law is or has been, and to adjudicate the rights of litigants are judicial powers; to say what the law shall be is "legislative." *Chisholm v. Georgia,* 2 Dall., 432; *Kilbourn v. Thompson,* 103 U. S., 192.

This results necessarily from the character of the structure which has been ordained and established by the people for the government of the State. Every student. knows that, in North Carolina, those who make the laws determine their expediency and wisdom, but they do not administer them. The chief magistrate, who . executes them, is not allowed to judge them. To another tribunal, the judiciary, is given the authority to pass upon their constitutional validity, "to the end that it be a government of laws and not of men." *Long v. Watts,* 183 N. C., 99.

It can make no difference whether the judges, as individuals, think ill or well of the manner in which the Legislature has dealt with a given subject, for, so long as the law-making body stays within the bounds of the Constitution, its acts are free from judicial interference. *Muskrat v. U. S.,* 219 U. S., 346. It is only when the General Assembly undertakes to exceed the grant of legislative authority, made to it in the organic law, that the courts are directed to restrain its action. *S. v. Lewis,* 142 N. C., 626. Such is one of the functions of the judiciary under a constitutional form of government like ours, but it can go no further in this respect. *Person v. Doughton,* 186 N. C., p. 725.

Speaking to the question in *S. v. Burnett,* 179 N. C., 735, *Hoke, J.,* said: "It is the accepted position in this State that our Constitution in vesting the General Assembly with legislative authority, conferred and intended to confer upon that body all the 'legislative powers of the English Parliament or other government of a free people,' except where

restrained by express constitutional provision or necessary implication therefrom," citing *Thomas v. Sanderlin,* 173 N. C., 329, *S. v. Lewis,* 142 N. C., 626, Black Constitutional Law (3 ed.), sec. 351, as authorities in support of the position.

The courts are limited to the exercise of judicial power by the same instrument which limits the Legislature to a given field of operation. *R. R. v. Cherokee County,* 177 N. C., 86. Unconstitutional acts of the Legislature may be rendered harmless by the courts in individual cases, when properly presented, but for the courts to strike down valid acts of the Legislature would be wholly repugnant to, and at variance with, the genius of our institutions. For this reason, every presumption is indulged in favor of the validity of an act of the law-making body. *Adkins v. Children's Hospital,* 261 U. S., 525.

Again, it should be remembered that we are dealing with a case where all other means of discipline had failed of proper results, and it is the judgment of the Legislature, as well as of the responsible authorities in charge, that, in such a case, corporal punishment should be administered as a necessary means of maintaining order and authority in the convict camps. It seems to have been the deliberate purpose of the refractory prisoner to defy the law and to challenge its authority. *Boone v. State,* 76 Tenn., 739. His conduct was highly reprehensible, and, if the statute be valid, the treatment accorded him was not unlawful. (See paragraphs 5 and 6 of statment of facts above.)

As pertinent to the instant case, the declaration of policy by the Legislature has been made in no uncertain terms, as witness the following from chapter 328, Public-Local Laws 1923, applicable to Buncombe County:

"Sec. 8. That when any prisoner or convict committed to or being worked on said roads becomes unruly, so as to make it necessary to whip said prisoner or convict, the superintendent in charge of the camp shall call in two persons of good moral character to witness the whipping, and the superintendent shall keep a record of the offense for which said prisoner was whipped, the number of blows inflicted, and the names of the witnesses present, and report the same within ten days to the commissioners of the county of Buncombe: *Provided,* no guard or other person in charge, except the superintendent, shall whip a prisoner or convict; and any superintendent who shall whip a convict or prisoner in a cruel and unmerciful manner shall be guilty of a misdemeanor and fined or imprisoned, in the discretion of the court.

"Sec. 9. That a complete record shall be kept by the superintendent in charge of all whippings, and his reports, required by this act to be made to the commissioners of the county of Buncombe, shall be filed and maintained as public records and open to public inspection."

It is conceded that if the Legislature had the power to enact this statute, containing the above provisions, then the defendant ought to be acquitted, for, with respect to the whipping administered to Lee Cody, it is admitted that he did no more than the statute allows. *McDonald v. State,* 6 Ga. App., 339. We are, therefore, face to face with the bare question as to whether "flogging," which is administered in neither a cruel nor unmerciful manner, may be employed, with legislative sanction and after fair notice, as a necessary means of discipline in the management of unruly or refractory convicts. *Westbrook v. State,* 133 Ga., 578, 18 Ann..Cas., 295, 26 L. R. A. (N. S.), 591; 21 R. C. L., 1178. We can find nothing in the Constitution which prohibits the Legislature from pursuing such a policy, and this is the only question presented by the defendant's appeal. *People v. Wright,* 40 N. Y. Sup., 285.

It ought to be observed, however, that the permission to prescribe such discipline and to administer corporal punishment, as a *dernier ressort,* is not unlimited by the statute. His Honor was in error in assuming, as it appears from his judgment he did assume, that the whole matter, including the adoption of rules, as well as their enforcement, is to be turned over to "irresponsible guards." It is expressly provided that no guard or other person in charge, except the superintendent, shall whip a prisoner or convict; and it is further provided that if any superintendent shall whip a convict or prisoner in a cruel and unmerciful manner, he shall be guilty of a misdemeanor and fined or imprisoned, in the discretion of the court.

Article XI, sec. 1, of the Constitution provides: "The following punishments only shall be known to the laws of this State, viz.: Death, imprisonment with or without hard labor, fines, removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under this State."

There are those who question the wisdom, and even the right, of the State to take life, or to inflict the death penalty, as a punishment for crime, but, in the face of the above provision and the number of electrocutions that take place annually in this State, none can deny the power of the Legislature to prescribe the death penalty. Indeed, capital punishment is a fact accomplished in North Carolina, and it is not' likely to be abolished soon.

A constitutional grant carries with it the necessary power of execution, and in the absence of specific prohibition, the Legislature may employ such means of execution as, in its judgment, may seem needful, advantageous, or appropriate. *McCullock v. Maryland,* 4 Wheat, 407; *Breweries v. Day,* 265 U. S., 545.

By the same token, the power of the Legislature to prescribe imprisonment with hard labor as a punishment for crime must be conceded. This is also a fact accomplished under numerous laws of the State. But it is said that the word "only," appearing in the above quotation, prohibits any punishment not therein designated. Can it be that under this section, the State may provide for the arrest and trial of criminals, sentence them, after conviction, to "imprisonment with hard labor," and then be forced to stop with the judgment pronounced, because it has no power to execute its decrees? We cannot think so. Such a holding by this Court would be to declare unlawful every kind of prison discipline of a punitory nature whatsoever, and to announce a doctrine at once palsied and impotent, so far as the management of convicts is concerned. Even the most ardent opponents of corporal punishment as a means of prison discipline would not go so far, and yet such would be the logical result, if the Court should declare the present act unconstitutional. It would stay the hand of the Legislature in dealing with the subject of prison discipline in any manner looking to the adoption of punitory measures. "This constitutional provision has no direct application to the discipline required in our jails and penitentiaries, for if so it would prevent solitary confinement, restriction of rations, and other reasonable punishments that are in customary use in prisons and penitentiaries." *Clark, C. J.,* in *S. v. Nipper,* 166 N. C., 272.

The argument directed against the constitutionality of the act proves too much; it is like "a vaulting ambition which o'erleaps itself and falls on t'other side."

The very next sentence in the Constitution, following the one above quoted, clearly sanctions the employment of disciplinary means as a matter separate and distinct from the punishment prescribed in the judgment of the court. It says: "The foregoing provision for imprisonment with hard labor shall be construed to authorize the employment of such convict labor on public works or highways, or other labor for public benefit, and the farming out thereof, . . . *Provided,* that no convict whose labor may be farmed out shall be punished for any failure of duty as a laborer, except by a responsible officer of the State," etc.

The Legislature has interpreted this provision to mean that prison discipline of a punitory nature may be authorized and committed to responsible officers for enforcement. In consequence of this construction, we find sections 7723 and 7728 of the Consolidated Statutes conferring such authority on officials of the State prison in certain designated cases. The statute now before us, applicable to Buncombe County, was enacted in 1923. Similar statutes have been passed for other counties.

There are several expressions in our Reports to the effect that, in the opinion of some of the judges, corporal punishment by flogging cannot be upheld as a lawful practice in the absence of direct statutory authority. *S. v. Mincher,* 172 N. C., 895; *S. v. Morris,* 166 N. C., 441; *S. v. Nipper, ibid.,* 272. But even in these cases, a majority of the Court was not willing to go so far. *Hoke, J.,* writing the prevailing opinion in *Nipper's case,* said: "These statutes clearly contemplate that the control and discipline of convicts and particularly in reference to their punishment, corporal or other, shall be pursuant to rules formally made and published by the board of county commissioners, or their duly authorized agents, and I would not hesitate to hold that these rules should be humane, reasonably designed to affect the well ordered governance of convicts, and that, in their prominent features, they should be made known beforehand to each and every prisoner, that they may live and act with knowledge of the penalties attendant on disobedience. In applying such a standard, I am not prepared to say that never, under any circumstances, is corporal punishment permissible, or that carefully prepared rules, looking to such result, are, in all instances, unlawful; but the question is not presented on this appeal, for there is no proof or suggestion that there were any rules or regulations of any kind which authorized the punishment inflicted in the present case."

And in *Mincher's case, Brown, J.,* delivering the opinion of the Court, said: "The kind of punishment that may be inflicted in order to enforce obedience to discipline upon the part of convicts engaged in working the public roads of the State is a difficult problem of serious importance addressed to the wisdom of the General Assembly. . . . If the convict is returned to jail because he will not work, he accomplishes his purpose. It is what he desires, and it destroys entirely the efficiency of a sentence to hard labor upon the roads. If the convict system of working the public roads is to be maintained, some kind of summary punishment must be inflicted in order to compel the unruly convict to work and in order to enforce discipline and obedience to authority. If this cannot be done, the system may as well be abolished."

The reasons assigned by the learned trial judge for holding the present statute unconstitutional are, we think, more properly addressed to the question of policy, which is a matter for the Legislature, than to the question of power, which alone the courts may consider. We hold that the statute, here challenged, is a valid exercise of the legislative power. Any objection to its provisions, on the ground of alleged impolicy, should be addressed to the legislative branch of the government.

Let the cause be remanded with direction that a verdict of not guilty be entered on the special findings of the jury. *S. v. Moore,* 29 N. C., 228.

Reversed.