HECTOR DIAZ, Petitioner v. DIVISION OF SOCIAL SERVICES and DIVISION OF MEDICAL ASSISTANCE, NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent

No. 523PA04

(Filed 7 April 2006)

**Public Assistance— Medicaid—illegal alien—emergency medical treatment**

Medicaid coverage was properly denied for chemotherapy for an illegal alien with acute lymphocytic leukemia after his condition stabilized and no longer constituted an emergency (although there was testimony that he would have regressed into an emergency condition without the treatments). There is an emergency treatment provision in the federal Medicaid statutes, but petitioner did not meet the statutory definition for an emergency medical condition when he received the treatments in question.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 166 N.C. App. 209, 600 S.E.2d 877 (2004), affirming a judgment and order entered on 23 May 2003 by Judge James W. Webb in Superior Court, Guilford County. On 3 March 2005, the Supreme Court allowed petitioner's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court 14 November 2005.

*Ott Cone & Redpath, P.A., by Melanie M. Hamilton, Thomas E. Cone, and Wendell H. Ott, for petitioner-appellee/appellant.*

*Roy Cooper, Attorney General, by Richard J. Votta, Assistant Attorney General, for respondent-appellant/appellee.*

DIAZ v. DIVISION OF SOC. SERVS.

[360 N.C. 384 (2006)]

BRADY, Justice.

This case requires determination of the scope of coverage and reimbursement for a nonqualifying alien's medical treatment under federal and North Carolina Medicaid law. Because we hold the relevant treatment provided to petitioner did not qualify as treatment for an emergency medical condition, we reverse the decision of the Court of Appeals.

## FACTUAL BACKGROUND

Petitioner Hector Diaz, a native of Guatemala, is "an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." 42 U.S.C. § 1396b(v)(1) (2000). In October of 2000, Diaz began experiencing sore throat, nausea, vomiting, bleeding gums, and increasing lethargy, which were later diagnosed as symptoms of acute lymphocytic leukemia (ALL).[1] Doctors at Moses Cone Memorial Hospital in Greensboro, North Carolina treated petitioner beginning on or about 21 October 2000. Chemotherapy treatments commenced shortly thereafter and continued intermittently until July of 2002.

At some time during his treatment, petitioner authorized the medical service provider to seek Medicaid coverage on his behalf. In the applications for Medicaid coverage relevant to this appeal, respondent Division of Medical Assistance (DMA) approved payment for emergency medical services from 21-22 October 2000 and 9-11 February 2002. DMA denied all other coverage dates relevant to this appeal as nonemergency services, and this denial was affirmed on administrative appeal by a final decision of the Chief Hearing Officer of the North Carolina Department of Health and Human Services. Consequently, none of petitioner's chemotherapy treatments at issue were reimbursed by Medicaid.

Petitioner appealed the final agency decision to the Guilford County Superior Court, which reversed respondent's decisions, finding the treatment was provided for an emergency medical condition and that "payment by Medicaid is not limited to emergency services; rather, Medicaid shall pay for all care and services as are medically necessary for the treatment of an emergency medical condition." Respondent then appealed to the North Carolina Court of Appeals, which unanimously affirmed the decision of the trial court. This

---

1. This disease is also referred to as "acute lymphoblastic leukemia" in medical literature and in portions of the record.

Court allowed respondent's petition for discretionary review and petitioner's conditional petition for discretionary review, and we now reverse the decision of the Court of Appeals.

## ANALYSIS

### STANDARD OF REVIEW

In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test. *See N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894-95 (2004).

### CONSTRUCTION OF 42 U.S.C. § 1396b(v)

Medicaid is a joint program between participating states and the federal government. North Carolina chose to participate and therefore must abide by federal statutory law governing Medicaid reimbursement by the federal government. *See* 42 U.S.C. § 1396a (2000). If a state does not follow federal Medicaid statutes in providing coverage for a patient, that state risks losing Medicaid reimbursement from the federal government for that payment. The relevant statute in this case provides the federal government will not make payment to a state for "medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." *Id.* § 1396b(v)(1). There is one exception to this broad rule, and that is for treatment of an emergency medical condition, not related to an organ transplant procedure, of an alien who would qualify but for his or her immigration status. *Id.* § 1396b(v)(2) (2000). Subsection (v)(3) defines an "emergency medical condition" as:

a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(A) placing the patient's health in serious jeopardy,

(B) serious impairment to bodily functions, or

(C) serious dysfunction of any bodily organ or part.

*Id.* § 1396b(v)(3) (2000). The relevant federal and North Carolina administrative codes are in accord with this definition. *See* 42 C.F.R. § 440.255(b)(1) & (c)(1) (2005); 10A NCAC 21B .0302(c) (June 2004). We must now interpret this statute and determine whether petitioner's treatments were for an emergency medical condition.

**DIAZ v. DIVISION OF SOC. SERVS.**

[360 N.C. 384 (2006)]

When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. *See Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish."). We find the statute in question to be clear and unambiguous; therefore, we will give effect to its plain meaning.

In the leading case on this issue, *Greenery Rehabilitation Group, Inc. v. Hammon*, the United States Court of Appeals for the Second Circuit held that continuous and regimented care provided for non-qualified aliens who "suffered sudden and serious head injuries that necessitated immediate treatment and ultimately left the patients with long-term debilitating conditions" was not covered under the Medicaid program. 150 F.3d 226, 228 (2d Cir. 1998). One of these patients, Izeta Ugljanin, was "[b]edridden and quadriplegic," requiring a feeding tube and extensive nursing care. *See id.* Another, Leon Casimir, was unable to walk and required continual monitoring and medication. He was unable to bathe, dress, eat, or use the toilet without assistance. *See id.* at 228-29. A third patient, Yik Kan, was legally blind. *See id.* at 229. The United States District Court for the Northern District of New York found Ugljanin and Casimir's treatments were for emergency medical conditions, but that Yik Kan's treatment was not. *See id.* at 231. In reversing the District Court as to the treatments for Ugljanin and Casimir, the Second Circuit wrote: "The patients' sudden and severe head injuries undoubtedly satisfied the plain meaning of § 1396b(v)(3). However, after the patients were stabilized and the risk of further direct harm from their injuries was essentially eliminated, the medical emergencies ended." *Id.* at 232.

In arriving at this "stabilization" construction of subsection 1396b(v)(3), the Second Circuit noted when determining whether a condition is an emergency medical condition, the key words are "emergency," "acute," "manifest," and "immediate." *See id.* Using the common definitions of those words, that court concluded: "[T]he statutory language unambiguously conveys the meaning that emergency medical conditions are sudden, severe and short-lived physical

injuries or illnesses that require immediate treatment to prevent further harm." *Id.* This analysis closely adheres to the clear and unambiguous language of subsection 1396b(v)(3). Accordingly, we find the *Greenery* decision persuasive.

Petitioner contends that once a patient presents with an emergency medical condition, any and all treatment necessary for the cure of the underlying cause of the emergency medical condition must be covered, even when the condition is no longer an emergency. We disagree. Petitioner's contention, in our view, is contrary to the plain meaning of the statute. Under subsection 1396b(v)(3), in order for a nonqualifying alien to be entitled to Medicaid coverage, his or her condition must require *immediate* intervention to prevent the occurrence of any of the three statutorily enumerated results. *See* 42 U.S.C. § 1396b(v)(3). The word "immediate" is commonly defined as: "occurring, acting, or accomplished without loss of time : made or done at once : INSTANT." *Webster's Third New International Dictionary* 1129 (16th ed. 1971). Therefore, treatment is not for an emergency medical condition under subsection 1396b(v)(3) unless one of the statutorily enumerated results is reasonably expected if immediate treatment is withheld.

We are cognizant the Supreme Court of Connecticut has decided a case factually similar to this one and has held contrary to our decision today. *See Szewczyk v. Dep't of Soc. Servs.*, 275 Conn. 464, 881 A.2d 259 (2005). However, in our opinion, the Connecticut decision applied a much broader interpretation of the word "immediate" than intended by Congress. The divided *Szewczyk* court seemed to rest much of its decision upon evidence in the record indicating that the nonqualifying alien in the case would have rapidly died if not provided treatment. *See id.* at 468, 881 A.2d at 262. In the case at bar, while there is no dispute Diaz received appropriate care in the standard medical course of treatment, there is nothing in the record that indicated the prolonged chemotherapy treatments must have been "immediate" to prevent the statutorily enumerated results. The record in the case *sub judice* and the record in *Szewczyk* differ as to whether immediate treatment was required to treat the respective conditions of the patients.

Additionally, while the *Szewczyk* court purported to follow the Second Circuit's decision in *Greenery* for the sake of uniformity between federal and state law in Connecticut, it added to the holding in *Greenery*: "Beyond the analysis of *Greenery* . . . we also note that the plain language of § 1936b(v) indicates that the statute encom-

passes payment for care beyond that which is immediately necessary to stabilize a patient." *Id.* at 482-83, 881 A.2d at 271. The reasoning behind this statement is the requirement that the treatment for an emergency medical condition not be "related to an organ transplant procedure." 42 U.S.C. § 1396b(v)(2)(C). Because Congress chose to not provide coverage for emergency medical services related to organ transplant procedures, the *Szewczyk* court reasoned that Congress intended for treatment under the statute to encompass more than stabilization because organ transplants are "undoubtedly . . . time-consuming and entail relatively lengthy hospitalizations." *Id.* at 483, 881 A.2d at 271. Presuming Congress would not enact superfluous legislation, the *Szewczyk* court assumed it was unnecessary to exempt coverage for organ transplant procedures if only short-term stabilization is required. *Id.* at 483-84, 881 A.2d at 271-72.

However, the construction of the statute by the Second Circuit in *Greenery* and this Court in the case *sub judice* does not render subsection (v)(2)(C) a superfluity. Congress simply provided that even if the only appropriate treatment for an emergency medical condition was an organ transplant, it had made a policy decision that the federal government would not reimburse state Medicaid payments for such a procedure. We are not persuaded the restriction found in subsection (v)(2)(C) changes the plain meaning of the word "immediate" found in (v)(3). Therefore, we follow the federal appellate court's interpretation of 42 U.S.C. § 1396b in *Greenery* and decline to follow the divided fellow state appellate court's interpretation in *Szewczyk*.

By giving effect to the plain meaning of the statute, we acknowledge " '[t]he role of the Court is not to sit as a super legislature and second-guess the balance struck by the elected officials.' " *State v. Bryant*, 359 N.C. 554, 565, 614 S.E.2d 479, 486 (2005) (quoting *Henry v. Edmisten*, 315 N.C. 474, 491, 340 S.E.2d 720, 731 (1986)); *see also State v. Revis*, 193 N.C. 192, 195, 136 S.E. 346, 347 (1927) ("The Legislature alone may determine the policy of the State . . . ."). Therefore we defer to the broad public policy statement of Congress found in subsection 1396b(v): "[N]o payment may be made to a State under this section for medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law." 42 U.S.C. § 1396b(v)(1). The narrow exception to this broad statement appears in subsection (v)(2), which provides for treatment of emer-

gency medical conditions if the alien would qualify but for his immigration status and the "care and services are not related to an organ transplant procedure." This exception is consistent with the public policy clearly articulated by Congress in 8 U.S.C. § 1601(6): "It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." The Second Circuit's analysis in *Greenery* follows the plain meaning of 42 U.S.C. § 1396b, and our holding is consistent with both the statute and *Greenery*.

Therefore, we hold an emergency medical condition is one which manifests itself by acute symptoms at the time of treatment and requires immediate treatment to stabilize the condition, such that the absence of this treatment would reasonably be expected to cause any of the three results listed in 42 U.S.C. § 1396b(v)(3)(A), (B), or (C). The State is not required to make payment for services provided to treat a nonqualifying alien's condition, unless it meets the definition of an emergency medical condition.

## APPLICATION OF SECTION 1396b(v)

Acute lymphocytic leukemia (ALL) is an acute leukemia "characterized by replacement of normal bone marrow by blast cells of a clone arising from malignant transformation of a hematopoietic stem cell." *The Merck Manual of Diagnosis and Therapy* 946 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999). The presenting symptoms of ALL are "fatigue, fever, malaise, weight loss," and other nonspecific symptoms. *See id.* at 947. When petitioner sought emergency treatment on or about 21 October 2000, he presented with severe symptoms, namely sore throat, nausea and vomiting, bleeding gums, and lethargy. At the time of his initial treatment in the emergency room, there is no dispute petitioner presented with an emergency medical condition. However, soon after his admission to the facility, petitioner's condition dramatically improved. During petitioner's chemotherapy treatments, his condition was stable and, therefore, he was no longer entitled to Medicaid coverage. As testified to by a medical doctor under contract to review cases for the Medicaid program, if petitioner had not received chemotherapy treatments, he would have eventually regressed into a state of an emergency medical condition. However, as also testified to by that same physician, at the time the chemotherapy treatments at issue were provided to petitioner, he did not meet the requirement of having an emergency medical condition. Thus, it was error for the trial court to reverse the final agency decision denying coverage for

CAPPS v. NW SIGN INDUS. OF N.C., INC.

[360 N.C. 391 (2006)]

the dates denied. Accordingly, we reverse the decision of the Court of Appeals and remand the case to that court with instructions to remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.