GLORIA WOODARD, Petitioner v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent

No. COA09-217

(Filed 17 November 2009)

## 1. Constitutional Law— due process—notice—opportunity to be heard

The administrative law judge (ALJ) did not violate petitioner's right to due process in a state employee termination case where the judge granted summary judgment for respondent and petitioner contended that she was denied notice of the basis for the motion and the opportunity to be heard. Petitioner did not explain how the ALJ's recitation of the statutory standard for summary judgment could be construed as a new argument.

## 2. Public Officers and Employees— termination—findings of fact—sufficiency of evidence—dismissal letter

The trial court did not err in a state employee termination case by affirming the State Personnel Commission's decision and order adopting the administrative law judge's findings where the findings to which petitioner objected constituted a summary of the evidence or significantly mischaracterized the underlying dismissal letter.

## 3. Public Officers and Employees— termination—failure to follow rules—belief that others violated rules

Summary judgment was correctly granted against petitioner in a state employee termination case where petitioner contended that there was an issue of fact concerning her perception that others were also violating respondent's rules. She did not offer legal precedent or logical reason to suggest that her own dishonesty would be mitigated by her alleged belief that others also violated those rules.

Appeal by Petitioner from judgment entered 25 November 2008 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 3 September 2009.

*Schiller & Schiller, PLLC, by David G. Schiller, for Petitioner-Appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Neil Dalton, for Respondent-Appellee.*

BEASLEY, Judge.

Petitioner (Gloria Woodard) appeals from the trial court's order, which affirmed an order of the State Personnel Commission (SPC), upholding Respondent's termination of Petitioner's employment. We affirm.

In 2006 Petitioner was employed as a Lieutenant and Assistant District Supervisor in Respondent's Motor Vehicles Division. Petitioner's position required her to conduct on-site audits of automobile dealerships. On 18 April 2006, Petitioner was dismissed from her employment for "unacceptable personal conduct." She received a dismissal letter informing her that she had been fired for "willful violation of known or written work rules"; "conduct unbecoming a State employee [and] detrimental to state service"; and "conduct for which no reasonable person should expect warning prior to dismissal." The dismissal letter further informed Petitioner of the "specific conduct issues" for which she was terminated:

1. Petitioner had admitted conducting at least fifteen (15) dealer audits from the office, without visiting the dealership premises, and then falsified her records of these inspections.

2. Petitioner had behaved in an "embarrassing and intimidating manner" towards a subordinate employee.

The dismissal letter also informed Petitioner that her actions violated "DMV License and Theft Bureau's Policy and Procedures, General Order 60, XVI, B, C, Periodic Dealer Compliance Audits; General Rules of Conduct, General Order 24, V, F, Conduct and Behavior; and General Order 24, V, F, Respect for Fellow Officers."

On 21 April 2006 Petitioner appealed her dismissal pursuant to Respondent's internal grievance procedures, and alleged that her dismissal was "both racially discriminatory and retaliatory[.]" By letter dated 27 April 2006, Respondent acknowledged Petitioner's appeal of her dismissal and stated its intention to investigate her claims. On 12 May 2006 Respondent's Human Resources Director informed Petitioner that its "investigation [had] resulted in no evidence to substantiate [her] allegation." Petitioner then sought a grievance hearing before a panel of NCDOT employees. On 1 August 2006 Respondent's Chief Deputy Secretary wrote Petitioner of his decision to uphold her dismissal. The Chief Deputy's letter stated that:

Your failure to make on sight visits to the dealerships and then filling out the audit forms as if you had, is unacceptable personal

**WOODARD v. N.C. DEP'T OF TRANSP.**

[201 N.C. App. 124 (2009)]

conduct, which alone justifies your dismissal. As an additional and separate issue. . . .

Your treatment of [your co-worker] as outlined above constitutes unacceptable personal conduct, which alone justifies your dismissal.

On 7 August 2006 Petitioner filed a petition seeking a hearing before the North Carolina Office of Administrative Hearings (OAH). Petitioner asserted that Respondent had "unlawfully dismissed Petitioner from employment without just cause" and that she had "not commit[ted] any alleged wrongdoing."

In addition to seeking relief through Respondent's internal grievance procedures:

On May 19, 2006, the [Petitioner] filed her Complaint in . . . Mecklenburg County, North Carolina, alleging claims for race-based discrimination and retaliation in violation of Title VII, 42 U.S.C. § 1983, and the North Carolina and United States Constitutions. On June 26, 2006, the Defendants removed the state court action to federal court.

*Woodard v. N.C. DOT*, 2007 U.S. Dist. LEXIS 66873 at 8 (W.D.N.C. Sept. 7, 2007). Petitioner's hearing before the OAH was stayed pending the outcome of Petitioner's federal claim. On 7 September 2007 a United States Magistrate Judge granted summary judgment for Respondent in *Woodard*, and dismissed Petitioner's claim. The Court's opinion held in pertinent part:

[On] March 17, 2006, the Plaintiff's behavior toward a former subordinate, Paula Norman, was viewed as "embarrassing and intimidating." . . . [I]t is the history of the Plaintiff's disrespectful and intimidating behavior toward Ms. Norman in 2004, when the [Petitioner] supervised her, which quite reasonably caused this incident to be perceived as negatively as it was.

On March 30, 2006, the Plaintiff admitted to her District Supervisor . . . that she had been conducting dealer audits from the Charlotte District Office rather than actually visiting the premises of the dealerships as required. The Plaintiff completed fifteen audits in this unauthorized manner—and on each occasion submitted official reports containing false information. Plaintiff does not deny that she completed off-site audits[.]

. . .

[T]he Plaintiff admitted to a major problem with her job performance. She was completing dealership audits dishonestly. She has presented no evidence besides her own speculation that other employees completed audits in this manner, and that this somehow excuses her dishonesty.

*Id.* at 4-6, 17.

On 5 December 2007 Respondent filed a summary judgment motion with the OAH, asserting that "there is no genuine issue as to any material fact . . . and [Respondent] is entitled to judgment as a matter of law." In its memorandum in support of its summary judgment motion, Respondent argued that the doctrine of collateral estoppel should be applied to bar relitigation of factual issues common to both Petitioner's federal case and her OAH claim.

On 13 February 2008, an OAH Administrative Law Judge (ALJ) issued a decision recommending that the State Personnel Commission (SPC) grant Respondent's motion for summary judgment. The ALJ issued an amended decision on 27 February 2008, correcting a typographical error. Petitioner filed exceptions to the ALJ's decision, and on 29 May 2008 the SPC issued a final agency decision affirming Petitioner's dismissal. Petitioner sought judicial review of the SPC's decision. On 25 November 2008 the trial court entered an order affirming the SPC's decision to uphold the ALJ. Petitioner has appealed from this order.

## Standard of Review

N.C. Gen. Stat. § 150B-51(b) (2007) allows a trial court to reverse or modify an agency's decision if the substantial rights of the petitioner have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b).

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Division of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2 (2006) (citations omitted). "An appellate court reviewing a superior court order regarding an agency decision 'examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Natural Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007) (quoting *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)).

_____

**[1]** Petitioner argues first that "the tribunals below violated [her] right to due process" on the grounds that she "was denied notice of the basis of [Respondent's] dispositive motion and was denied the opportunity to be heard on it." We disagree.

As discussed above, Respondent filed a summary judgment motion with the OAH, in which it asserted that there were no genuine issues of material fact and that Respondent was entitled to summary judgment as a matter of law. In a memorandum of law supporting its motion, Respondent urged that the findings of the United States Magistrate Judge in *Woodard* were binding on the OAH, based on the doctrine of collateral estoppel. In its decision granting Respondent's summary judgment motion, the ALJ ruled that "Respondent proved there are no genuine issues of material fact that Respondent had just cause to dismiss Petitioner from employment."

On appeal, Petitioner characterizes the ALJ's determination that summary judgment was proper because there were no genuine issues of material fact as a "new theory of the case." Petitioner contends that she was subjected to "trial by ambush" and that her right to due process was violated because she had no notice or opportunity to be heard regarding "the new argument advanced by the ALJ." However, Petitioner does not dispute that Respondent filed a summary judgment motion wherein it asserted the absence of any genuine issues of material fact. Nor does Petitioner challenge the familiar rule that summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

WOODARD v. N.C. DEP'T OF TRANSP.

[201 N.C. App. 124 (2009)]

affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007).

Petitioner articulates no theory to explain how the ALJ's recitation of the statutory standard for summary judgment could be construed as a "new argument advanced by the ALJ." This assignment of error is overruled.

---

[2] Petitioner next argues that the trial court erred in affirming the State Personnel Commission's Decision and Order which adopts the ALJ's Findings of Fact No. 10(b), (c), and (d), on the grounds that these findings of fact "exceed the scope of the dismissal letter, in violation of N.C. Gen. Stat. § 126-35." We disagree.

The challenged findings of fact state that:

10. (b) Petitioner filed 15 audit reports containing false information that implied Petitioner inspected the premises subject to those audits. Petitioner admitted she never requested permission from her supervisor to conduct audits in such a manner.

10. (c) Robinson also noted that Petitioner violated written work rules, and engaged in unacceptable conduct by belittling Paula Norman, Petitioner's subordinate employee, in front of other employees, and by humiliating Norman in a manner that brought disgrace upon the License and Theft Bureau.

10. (d) Attached to Robinson's affidavit were EEO Consultant George Nixon's notes from his interviews during the internal investigation. Mr. Nixon verified his interview notes by signing the notes. He noted that Purnell Sowell, Petitioner's supervisor, heard Petitioner "speak down" to Ms. Norman in front of others, made Norman cry on several occasions, and embarrassed Norman in front of her co-workers. In addition, Mr. Nixon interviewed Petitioner, and noted that Petitioner admitted she did audits in the office to save time as her office does 1200 audits per year. She admitted that she knew she violated DMV policy by doing so. She admitted telling her supervisor, Purnell, that she was doing audits when he saw her doing audits in her office.

Petitioner contends that the "dismissal letter does not state the events described in the Decision, FOF # 10(b), (c) and (d) as reasons

for [Petitioner's] dismissal[,]" and asserts that the "termination letter merely asserts that [Petitioner] said hello to a co-worker at a funeral."

We first note that the ALJ's finding of fact 10(d) is not actually a finding of the ALJ, but a summary of some of the evidence before it. *See, e.g., In re L.B.*, 184 N.C. App. 442, 450, 646 S.E.2d 411, 415 (2007) (" 'verbatim recitations of the testimony of each witness do not constitute findings of fact by the trial judge' ") (quoting *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 (1984)). In the instant case, the only "fact" found by the ALJ in Finding 10(d) is that EEO Consultant George Nixon made certain notes of his interviews and investigation. Petitioner neither disputes the accuracy of the ALJ's summary of Nixon's notes, nor demonstrates prejudice arising from the inclusion of this recitation.

The dismissal letter states in relevant part that:

After careful consideration of all the information made available to me, including your comments at the pre-disciplinary conference. . . . I have decided to dismiss you for unacceptable personal conduct. The specific conduct issues that represent the basis for the dismissal are:

1. Willful violation of known or written work rules[.]

2. Conduct unbecoming a State employee detrimental to state service[.]

3. Conduct for which no reasonable person should expect warning prior to dismissal[.]

On March 30, 2006, you admitted to your District Supervisor, Mr. Purnell Sowell, that you had been conducting dealer audits at the Charlotte District Office in lieu of actually visiting the premises of the dealerships. . . . By conducting, recording and reporting these inspections improperly, you falsified your record of inspections. At least fifteen (15) audits were conducted in this manner.

On March 17, 2006, while attending a visitation service, your actions toward Auditor Paula Norman, a subordinate employee, were perceived as embarrassing and intimidating. . . . Two fellow supervisors witnessed these actions.

The ALJ's findings of fact 10(b) and (c) address the same issues that are discussed in the dismissal letter. We conclude that Petitioner's contention, that the dismissal letter "merely asserts that

Ms. Woodard said hello to a co-worker at a funeral" is a significant mischaracterization of the letter's contents.

---

**[3]** Finally, Petitioner argues that the trial court erred by affirming the summary judgment order "because a review of the record reveals material disputes of fact." We disagree.

Petitioner was dismissed from employment for two separate aspects of her job performance: her violation of Respondent's rule requiring audits to be conducted on-site, and her treatment of co-worker Paula Norman. In his letter upholding Petitioner's dismissal, Respondent's Chief Deputy Secretary states that either of these transgressions "is unacceptable personal conduct, which alone justifies your dismissal."

Petitioner neither asserts any issue of fact regarding her behavior towards Ms. Norman, nor argues that her treatment of Norman, standing alone, does not constitute just cause for her dismissal.

Regarding Petitioner's violation of Respondent's rules for conducting audits, Petitioner does not dispute the existence of a rule requiring audits to be conducted on site, and does not deny violation of this rule. Nor does Petitioner argue that willful violation of this rule and intentional falsification of her audit records does not constitute just cause for dismissal. Instead, Petitioner posits the existence of an "issue of fact" regarding her perception that other employees had violated the same rule. She asserts that, if she violated Respondent's rule "because she observed others doing it and concluded that it was acceptable to perform the audits in this manner, then she was not being dishonest." Petitioner fails to offer any legal precedent or logical reason to suggest that her own dishonesty would be mitigated by her alleged belief that other employees also violated Respondent's rules. This assignment of error is overruled.

We find it necessary to remind Petitioner's counsel that N.C. Gen. Stat. § 1A-1, Rule 11(a) (2007) provides in pertinent part that:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name[.] . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith

HARDY v. BEAUFORT CNTY. BD. OF EDUC.

[201 N.C. App. 132 (2009)]

argument for the extension, modification, or reversal of existing law[.] . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction[.]

For the reasons discussed above, we conclude that the trial court did not err and that its order should be

Affirmed.

Judges STEPHENS and HUNTER, JR. concur.