IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-298

Filed 6 August 2025

Orange County, No. 23-CVS-63

CONNOR P. FRALEY, Plaintiff,

v.

ORANGE COUNTY BOARD OF ELECTIONS, Defendant.

Appeal by Plaintiff from order entered 23 March 2023 by Judge Allen Baddour in Orange County Superior Court. Heard in the Court of Appeals 22 August 2023.

*Connor P. Fraley, Pro Se, for plaintiff-appellant.*

*Joseph E. Herrin and Martha C. Bordogna, for defendant-appellee.*

STADING, Judge.

This case concerns North Carolina's law governing the procedure for an unaffiliated candidate's name to appear on the general election ballot for a county office. Connor P. Fraley ("Plaintiff") appeals from an order granting summary judgment for the Orange County Board of Elections ("Defendant"). After careful consideration, we hold the trial court committed error and therefore reverse its order and remand for entry of an order granting Plaintiff's motion for summary judgment.

**I. Background**

During the 2022 election cycle, Plaintiff "sought nomination to and the placement of his name on the ballot for the office of Orange County Commissioner,

District 2, by petition in accordance with N.C. Gen. Stat. § 163-122(a)(3) [(2023)]." Upon receipt of Plaintiff's written petition, Defendant consulted the county attorney, who determined that "a successful nomination petition for placement on the ballot as an unaffiliated candidate for the District 2 seat required . . . four percent of the full-county registered voter population rather than four percent of the nominating district[.]" After the filing period closed, Defendant sent a letter to Plaintiff stating "that the petition had failed."

On 19 January 2023, Plaintiff filed a complaint against Defendant seeking a declaratory judgment. The complaint requested that:

> Declaratory Judgment be entered establishing that in order for a qualified citizen to be nominated by petition pursuant to N.C. Gen. Stat. § 163-122(a)(3) and have their name placed on the general election ballot for County Commissioner in a seat nominated by District pursuant to Orange County Code of Ordinances § 13-2(b)(2), the number of valid signatures required on such petition shall be four percent (4%) of the total number of registered voters in the nominating district according to the voter registration records of the State Board of Elections as of January 1 of the year in which the general election is to be held.

The complaint also requested that Plaintiff "recover the costs and expenses of this action from Defendant," and that he "recover any further relief that the [trial court] deems appropriate."

On 1 February 2023, Defendant moved for summary judgment, and on 7 February 2023, Plaintiff moved for summary judgment. Upon consideration of the

matter, the trial court granted summary judgment for Defendant, denied Plaintiff's motion for summary judgment, and dismissed Plaintiff's action. The trial court also ordered that each party pay their own costs for the action. Plaintiff timely appealed on 23 March 2023.

## II.     Jurisdiction

There is an appeal of right to our Court under N.C. Gen. Stat. § 7A-27(b)(1) (2023) from "any final judgment of a superior court," with exceptions not relevant here.

## III.     Analysis

Plaintiff asks us to interpret the statutory requirements for nomination by petition of an unaffiliated candidate seeking to appear on the ballot in the general election for District 2 on the Orange County Board of Commissioners. Plaintiff maintains the trial court committed error by interpreting N.C. Gen. Stat. § 163-122(a)(3) as requiring him to secure four percent of the qualified voters in the county when filing his written petition of candidacy. Plaintiff argues N.C. Gen. Stat. § 163-122(a)(3) and Orange County Code § 13-3(b)(2) require him to only secure four percent of the qualified voters in District 2 when filing his written petition of candidacy.[1] After careful consideration, we agree.

---

[1] Plaintiff also argues N.C. Gen. Stat. § 163-122(a)(3) is unconstitutional because it violates the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment. "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Lloyd,*

## A. Standard of Review

A party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). "The movant is entitled to summary judgment . . . when only a question of law arises based on undisputed facts." *Daughtridge v. Tanager Land, LLC*, 373 N.C. 182, 186, 835 S.E.2d 411, 415 (2019) (quoting *Ussery v. Branch Banking & Tr.*, 368 N.C. 325, 335, 777 S.E.2d 272, 278 (2015)). "The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Questions of statutory interpretation are reviewed de novo. *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citations omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Lynn v. Fannie Mae*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014) (citation omitted).

"The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature." *McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 485, 687 S.E.2d 690, 694 (2009). "When the language of a statute is clear and without

354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001) (citation omitted). Plaintiff's declaratory judgment action sought a statutory interpretation and did not raise a constitutional challenge during trial court's proceedings. Additionally, since we resolve this matter on statutory grounds, we need not address Plaintiff's argument regarding the constitutional implications of the trial court's ruling.

ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citation omitted).

### B. Statutory Framework

Plaintiff argues the trial court committed error by interpreting N.C. Gen. Stat. § 163-122(a)(3) to require his collection of at least four percent of all qualified Orange County voters' signatures before appearing on their general-election ballot as an unaffiliated candidate.

Under North Carolina law, there are three paths for a candidate to secure placement on a general election ballot for "any federal, state, county, or municipal office: (1) by becoming the nominee of a major political party selected by primary election; (2) by becoming the nominee of a 'new' political party selected at that party's state convention; and (3) by being nominated by petition as an unaffiliated candidate." *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1218 (4th Cir. 1995); *see also* N.C. Gen. Stat. § 163-122 (titled "Unaffiliated candidates nominated by petition."). "Each avenue to ballot access comes with its own requirements imposed by state election law in order to protect the state's interest in having a fair, ordered election." *Greene v. Bartlett*, No. 5:08-CV-088-GCM, 2010 U.S. Dist. LEXIS 87309, at *2 (W.D.N.C. Aug. 24, 2010). Relevant here, "[a]n unaffiliated or independent candidate is not a candidate of a political party as defined by N.C. Gen. Stat. § 163-96. States commonly require unaffiliated candidates to show a minimum level of

support by garnering a certain number of petitions supporting their candidacy[.]" *Id.* at *2–3.

In structuring its board of commissioners, a county may adopt one or any combination of the options prescribed by N.C. Gen. Stat. § 153A-58. Subsection 153A-58(3) provides the "[m]ode of election" of the board of commissioners:

> a. The qualified voters of the entire county shall nominate all candidates for and elect all members of the board.
>
> For options b, c, and d, the county shall be divided into electoral districts, and board members shall be apportioned to the districts so that the quotients obtained by dividing the population of each district by the number of commissioners apportioned to the district are as nearly equal as practicable.
>
> b. The qualified voters of each district shall nominate candidates and elect members who reside in the district for seats apportioned to that district; and the qualified voters of the entire county shall nominate candidates and elect members apportioned to the county at large, if any.
>
> c. The qualified voters of each district shall nominate candidates who reside in the district for seats apportioned to that district, and the qualified voters of the entire county shall nominate candidates for seats apportioned to the county at large, if any; and the qualified voters of the entire county shall elect all the members of the board.
>
> d. Members shall reside in and represent the districts according to the apportionment plan adopted, but the qualified voters of the entire county shall nominate all candidates for and elect all members of the board.
>
> If any of options b, c, or d is adopted, the board shall divide the county into the requisite number of electoral districts according to the apportionment plan adopted, and shall cause a delineation of the districts so laid out to be drawn

up and filed as required by G.S. 153A-20. No more than half the board may be apportioned to the county at large.

This subsection addresses both method of nomination and method of election for each seat, referring to nomination and election separately.

Defendant structures its mode of elections for the board of commissioners in accordance with subsection 153A-58(3)(c), which provides:

> The qualified voters of each district shall ***nominate*** candidates who reside in the district for seats apportioned to that district, and the qualified voters of the entire county shall ***nominate*** candidates for seats apportioned to the county at large, if any; and the qualified voters of the entire county shall ***elect*** all the members of the board.

*Id.* (emphasis added); *see* Orange County, N.C., Code § 13-3(b)(2) (titled "Structure of and mode of electing board of commissioners."). Accordingly, "the county shall be divided into electoral districts, and board members shall be apportioned to the districts so that the quotients obtained by dividing the population of each district by the number of commissioners apportioned to the district are as nearly equal as practicable." N.C. Gen. Stat. § 153A-58(3)(a). Additionally, "the board shall divide the county into the requisite number of electoral districts according to the apportionment plan adopted, and shall cause a delineation of the districts so laid out to be drawn up and filed as required by G.S. 153A-20." *Id.* § 153A-58(3)(d).

As noted above, Orange County Code § 13-3(b)(2) structures its mode of elections for the board of commissioners to mirror subsection 153A-58(3)(c). Subsection 13-3(b)(2) delineates a structure whereby the voters of District 1

***nominate*** candidates for three district-representative Board seats; the voters of

District 2 ***nominate*** candidates for two district-representative Board seats; and the

entire County electorate ***nominates*** candidates for two at-large Board seats.  It

states, however, the entire county ***elects*** all the members of the Board:

> Now, therefore, be it resolved, by the Orange County Board of Commissioners, pursuant to N.C. Gen. Stat. § 153-A-58 . . . Change from the qualified voters of the entire County nominating all candidates for and electing all members of the board to a structure in which there is one three-member district (District 1), one two-member district (District 2) and two members at large; members shall reside in and represent the districts according to the apportionment plan adopted; *the qualified voters of each district shall **nominate** candidates who reside in the district for seats apportioned to that district,* and the qualified voters of the entire county shall ***nominate*** candidates for seats apportioned to the county at large*;* and the qualified voters of the entire county shall ***elect*** all the members of the board.

*Id.* (emphasis added).

Our law further provides specific rules pertaining to unaffiliated candidates

who are nominated by petition.  *See* N.C. Gen. Stat. § 163-122.  A voter who desires

to have their name printed on the general election ballot as an unaffiliated candidate

for a county office or single county legislative district shall:

> [F]ile written petitions with the chair or director of the county board of elections supporting the voter's candidacy for a specified county office. These petitions must be filed with the county board of elections on or before 12:00 noon on the day of the primary election and must be signed by qualified voters of the county equal in number to four percent (4%) of the total number of registered voters in the

> county as reflected by the voter registration records of the State Board of Elections as of January 1 of the year in which the general election is to be held, *except if the office is for a district consisting of less than the entire county and only the voters in that district vote for that office*, the petitions must be signed by *qualified voters of the district* equal in number to four percent (4%) of the total number of voters in the district according to the voter registration records of the State Board of Elections as of January 1 of the year in which the general election is to be held.

*Id.* § 163-122(a)(3) (emphasis added).

"If the office is *a county office or a single county legislative district*," an unaffiliated candidate must file a written petition "signed by qualified voters of the county equal in number to four percent (4%) of the total number of registered voters in the county" to have their name listed on the general election ballot. *Id.* (emphasis added). However, "if the office is for *a district consisting of less than the entire county and only the voters in that district vote for that office*"—such as Orange County District 2—subsection 163-122(a)(3) provides that an unaffiliated candidate must file a written petition "signed by qualified voters *of the district* equal in number to four percent (4%) of the total number of voters *in the district*[.]" *Id.* (emphasis added).

Here, the trial court erroneously determined that Plaintiff, an unaffiliated candidate who desired to appear on the general election ballot for an office "for a district consisting of less than the entire county," was required to obtain four percent of the total number of qualified voters in the whole county under subsection 163-122(a)(3). But a plain reading of the statute supports an interpretation that to be

*nominated* for District 2, Plaintiff was only required to garner signatures "by qualified voters of the district equal in number to four percent (4%) of the total number of voters in the district[.]" *Id.* To that end, Orange County Code § 13-3(b)(2) expressly provides, "the qualified voters of each district shall ***nominate*** candidates who reside in the district for seats apportioned to that district, and the qualified voters of the entire county shall ***nominate*** candidates for seats apportioned to the county at large[.]" (emphasis added). The requirement that "only the voters in that district vote for that office" is referring to the nomination process, not the election process, in the context of the ordinance. Accordingly, the trial court committed error by awarding summary judgment for Defendant.

## IV.    Conclusion

For the reasons above, the trial court's order granting Defendant's motion for summary judgment is reversed, and this matter is remanded for entry of an order granting Plaintiff's motion for summary judgment.


REVERSED AND REMANDED.

Judges STROUD and FLOOD concur.